ODEGARD, Respondent, vs. NORTH WISCONSIN LUMBER COMPANY, Appellant.

*January 30—February 19, 1907.*

*Venue: Prejudice of judge: Change of place of trial: Calling in another judge: Jurisdiction: Costs of former trials: Failure to pay: Stay of action: Discretion: Negligence: Personal injuries: Master and servant: Notice of injury: Failure to serve: Commencement of action within one year: Dismissal: Subsequent action: Statutes: Pleading: Variance: Evidence: Admissibility: Witnesses: Hypothetical questions: Appeal and error: Assignment of error: Trial: Examination of witnesses: Champertous agreement: Special verdict: Form of questions: Rules of court: Reasonableness: Validity: Refusal of requests for instructions: Instructions to jury: Proximate cause: Prejudicial error: Excessive damages.*

1. At the time an action was commenced in the circuit court for S. county that county had two terms a year, one commencing in June and the other in November. The action was not triable at the June term and, before the commencement of the following November term, the defendant interposed an affidavit alleging prejudice of the presiding judge and also a motion for a

stay of proceedings until plaintiff paid certain costs. Thereupon the presiding judge called in another circuit judge, who, on a date before the commencement of the November term, attended and heard the motion and continued the same for further hearing, but ordered that in the meantime the plaintiff's proceedings be stayed, so far as moving the cause for trial at the coming November term, until such costs were paid. The costs were not paid, and subsequently an order was entered vacating the temporary stay and authorizing the plaintiff to notice the cause for trial at the succeeding June term, which was accordingly done. On the last day of the November term defendant appeared and moved that the cause be sent to another county, which motion was denied, and the cause was tried at the June term for which it had been noticed for trial. Sec. 2625, Stats. 1898, as amended by ch. 101, Laws of 1901, and ch. 282, Laws of 1905, provides that the court shall change the place of trial of any action or special proceedings on the application of a party thereto who shall file his affidavit alleging prejudice of the presiding judge, but that in lieu of granting such application the judge may in his discretion retain the action or proceedings in the same court "until the last day of the then current term if the application is made at a term at which the action is triable, or the next term if it is made in vacation, and in the meantime shall call upon some other judge or judges to attend and hold court during such current or next term for the purpose of exercising jurisdiction in all actions or proceedings in which applications for change of the place of trial have been made for such reason. And while so in attendance said judge may make all orders and hear all applications and motions that may be brought on for hearing during the time he shall attend. If such other judge or judges (as may be necessary or convenient) can so attend and hold court for such purpose at either such terms, the same shall be done with the same effect as if a change of venue to another circuit and a trial of such action or proceeding had been had therein; *but if no such judge shall so attend*, an order for a change of the place of trial shall be entered in each such action and proceeding, wherein proper application has been made, on the last day of such term, and thereupon such change shall be made." *Held:*

(1) The purpose of the statute is to secure to the party making the required affidavit not only an unprejudiced trial, but a trial in the home circuit, provided a competent judge seasonably attends, and at the same time to secure both parties against a long delay.

(2) The statute contemplates that there shall always be one

Odegard v. North Wis. L. Co. 130 Wis. 659.

term at which the cause can be tried in the home circuit, and that such term shall be a term at which the cause is in a situation to be moved peremptorily for trial.

(3) The cause can be sent from the circuit only after the lapse of a term at which it could be tried.

(4) The presiding judge calls in another judge for the purpose of *exercising jurisdiction*, and not alone for the purpose of trying the cause.

(5) When the "other judge" held court and heard and passed upon the motions, he did "so attend" within the meaning of the statute, and hence, under the provision "if no judge shall so attend," it was not error to refuse to change the place of trial on the last day of the November term.

(6) The action was properly triable in S. county at the June term at which it was tried.

2. As a general rule, where a plaintiff has been nonsuited and brings a second action for the same cause, a presumption arises either that the second action is vexatious or that the cause of action is without merit, and hence a court will not allow the plaintiff to proceed with the second action until he has paid the costs of the first.

3. Such presumption, however, yields to proof showing that the prosecution of the second action is in good faith, and that the failure of the previous action was not due to infirmity in the cause of action, but to untoward circumstances or excusable mistake.

4. When in connection with such proof it appears that the plaintiff is absolutely unable to pay the previous costs on account of poverty or want of credit, a case arises where the court in the exercise of a wise and just discretion may fairly allow the second action to proceed notwithstanding the fact that the previous costs are unpaid.

5. Courts are open to the prosecution of meritorious and *bona fide* causes of action in good faith, and poverty, while it gives no license to any one to vex or harass his neighbor with unfounded lawsuits, alone should not prevent a needy litigant who presents a meritorious cause of action from invoking the courts to do justice between himself and his neighbor.

6. Under the facts, stated in the opinion, it is *held* there was no abuse of discretion in denying a motion to stay proceedings in an action until the costs of two previous actions, founded on the same cause of action, had been paid.

7. Under sec. 4222, Stats. 1898, as amended by ch. 307, Laws of 1899 (providing that, when an action shall be brought and a complaint actually served therein within one year after the

happening of the event causing such damages, the notice therein provided need not be served), no notice is necessary where the plaintiff had brought an action within one year after the happening of the event causing such damages, wherein he was nonsuited, although the instant suit for the same cause of action was begun more than one year after the event causing the damages.

8. Under such statute it is not essential that the previous complaint should have alleged the same ground of negligence as that upon which recovery in the subsequent action is obtained.

9. In an action by a servant for injuries from the defective operation of machinery it is not necessary that the servant, at his peril, ascertain the initial cause of the defective operation and set it forth in his pleading. It is sufficient, as against demurrer or objection upon the trial, if he describe the machine and its operation and allege the ultimate fact that the machine was defective in that it was not at the time subject to control by the means employed as it should have been, and that thereby it became uncontrollable, and that the accident resulted from such want of control, although the pleading may be subject to a motion to make it more definite and certain.

10. In an action by a servant for injuries from the defective operation of machinery the plaintiff alleged one specific fact which he claimed was a cause of the uncontrollability, but he also alleged that there were other defects unknown to him. *Held*, that such allegations were sufficient to entitle plaintiff to introduce evidence of defective construction in any respect which was shown to be effective to produce the uncontrollable condition.

11. In an action by a servant for injuries from the defective operation of a machine, evidence that at the time of the trial the machine "worked nice and smooth" is inadmissible, where it appeared there had been material changes in the machine between the time of the accident and that of the trial.

12. In such case, however, evidence that the machine did not work perfectly and bothered at times before the changes is *held* admissible.

13. Objection to a hypothetical question because assuming facts not supported by the evidence is not tenable where there is some evidence of the facts assumed.

14. Where counsel have not specified in what respect a hypothetical question fails to correspond to facts in evidence, an assignment of error thereon will not be considered.

15. In an action by a servant for injuries while working on a saw carriage operated by steam, alleged to have been caused by the

fact that the operation of the carriage was not readily controllable, it is *held* to have been error to exclude expert evidence offered by defendant that it was a physical impossibility for the difference in the size of the exhaust pipe and the supply pipe to affect the working of the valve controlling the carriage; that the difference would have no effect upon the accumulation of water; that the valve in use on the apparatus was in general use in Wisconsin and this section of the country; that such valve was manufactured and supplied by reputable makers of sawmill machinery; as to the effect of the running of the carriage against the bumper on the movement of the plug in the valve; as to the effect of water in the valve on the movement of the sawyer's lever; whether it was possible for the valve to reverse without movement of the lever; whether a certain six-inch pipe was in accordance with the usual construction; and whether it was physically possible for the carriage to run back after striking the bumper without movement of the sawyer's lever.

16. Where, in an action for injuries to a servant, the plaintiff was placed on the stand as an adverse witness and produced a written agreement with his attorneys, which contained nothing of a champertous nature, and twice denied that he had any agreement except the written one, the court was *held* justified in excluding any further examination of plaintiff on that subject.

17. In an action by a servant for injuries, plaintiff alleged the defective operation of a steam sawmill carriage and also the incompetence of defendant's engineer in charge of the carriage at the time of the accident. *Held*, under the evidence, stated in the opinion, that the questions whether the alleged defective operation of the steam valve was not in part the cause of the engineer's failure to seasonably reverse the lever controlling the machinery; whether the engineer was incompetent; whether such incompetence was known or should have been known to defendant, and whether the accident was either wholly or partially the result of such incompetence, were proper questions to submit to the jury, and that it was not error to refuse to direct a verdict in favor of defendant on the ground that no negligence was shown, or that, if negligence was shown, it was not the proximate cause of the injury.

18. In an action by a servant for injuries alleged to have been caused, in part, by the incompetence of defendant's engineer, a question submitted as part of the special verdict asked whether the injury was caused by the incompetence or *want of skill* of the engineer. *Held*, that the sole inquiry in this respect was whether the injury was proximately caused by the *incompe-*

*tence* of the engineer, and that the question should be so framed as to put that inquiry only.

19. In such case, if the words "want of skill" meant incompetence they were surplusage; if they meant something different then they were not only immaterial but made the question double.

20. An inquiry in a question of a special verdict as to whether defendant "knew or ought to have known" presents an inquiry as to two separate facts.

[21. Whether questions of a special verdict inquiring whether defendant knew or ought to have known certain facts are defective for duplicity, not decided.]

22. In submitting a question of a special verdict the court inquired whether a majority of the millowners under the same circumstances should have reasonably foreseen that an engineer's incompetence would be likely to cause an injury to *plaintiff*. *Held*, that the question was inaccurate, since it was only necessary to inquire whether the engineer's incompetence would be likely to cause injury to *another*.

23. A rule of court in order to be valid must be reasonable.

24. The right to present instructions applicable to the case and have them given to the jury if they state the law correctly is an ancient right, recognized and guaranteed by sec. 2853, Stats. 1898, subject to the limitation that they must be in writing.

25. A rule of court which substantially impairs such right in requiring that a party must submit his requests for instructions to the jury in writing before he shall first rest his case, and that he shall cite the authorities upon which he relies to support each proposition or the court will not consider such request, substantially impairs the right to present instructions, recognized and guaranteed by sec. 2853, Stats. 1898, is unreasonable, and hence void.

26. In an action for injuries to a servant alleged to have been caused by the defective operation of a machine and also, in part, by the negligence of an incompetent engineer, requests for instructions, stated in the opinion, as to the rules by which the jury were to determine the question of the competence of the engineer and the question of the plaintiff's contributory negligence, and as to the burden of proof, are *held* to state correct legal principles applicable to the case and not covered by the general charge.

27. In such case a requested instruction that the jury could not find the engineer incompetent from the fact that he might have been guilty of one *or more* isolated acts of negligence is *held* too broad a statement. Proof of a single act of negligence is not sufficient to raise an inference of incompetence, while proof of many such acts may. '

28. Where a special verdict is taken it is not error to refuse to give a requested instruction containing a substantially correct statement of the law, but which is general and does not apply to any question of the special verdict.

29. In an action by a servant for injuries the court instructed the jury that proximate cause was the immediate, 'direct, actual, natural, efficient, and real cause. *Held* inaccurate, but not prejudicial to defendant, since it placed a heavier burden on the plaintiff than the correct rule.

30. In such case the inaccuracy was not prejudicial, since the jury, in answer to specific questions of the special verdict, had found all the elements of fact constituting proximate cause.

31. In an action by a servant for the loss of his leg, under the facts, stated in the opinion, a verdict for $8,500 is *held* not to be excessive.

APPEAL from a judgment of the circuit court for Sawyer county: W. C. SILVERTHORN, Judge. *Reversed.*

This is an action to recover damages for personal injuries sustained by plaintiff April 21, 1902, while employed in defendant's sawmill at Hayward, Wisconsin. On the day named the plaintiff was working as a rider upon one of the saw carriages in the mill, which carriage was operated by means of what is known as a steam feed, which lets steam into a long cylinder in which a piston works, which is attached to the carriage and propels it very rapidly forward and back past a band saw, thus sawing lumber from a log or cant fixed upon the carriage. The head sawyer operates the carriage by means of a lever which moves a valve in the steam-feed apparatus and lets in or shuts off the steam. Just prior to the accident the sawyer, one Magnuson, called the engineer, Lee, and stated that the feed was working hard. After finishing the sawing of the log then on the carriage the sawyer stepped aside and Lee took hold of the lever and ran the carriage back and forth a few times, apparently without difficulty, and the sawyer told him to open the valve wide and he would feel it. The plaintiff meanwhile remained on the carriage. Lee then opened the valve wide and the carriage started rapidly past the saw. Lee failed to reverse the lever in time and the car-

riage bumped against the bumper, the plaintiff was thrown down on the carriage, which at once started rapidly back, and plaintiff's leg, which was projecting over the edge of the carriage, was sawed off below the knee as the carriage passed the saw. The sawyer grabbed the lever as the carriage passed the saw and stopped the carriage. The plaintiff's claim was that the steam-feed apparatus was defective in that the pipe conducting the exhaust steam away from the valve, called the port pipe, was too small, and that there were other defects of which he was ignorant but which the plaintiff well knew, causing the carriage to jerk or stick. He also claimed that Lee was an incompetent engineer and known to be so by defendant, and that the accident was the combined result of the defects in the apparatus and the incompetence of Lee. The jury returned a special verdict as follows:

"(1) Was the *North Wisconsin Lumber Company,* the defendant, at the time mentioned in the complaint in this action, a corporation existing under the laws of the state of Wisconsin? *A.* (by the court) Yes. (2) Was the said *North Wisconsin Lumber Company,* on April 21, 1902, the owner of and engaged in operating a sawmill at Hayward, Wisconsin? *A.* (by the court) Yes. (3) Was the plaintiff, *Ole Odegard,* on said 21st day of April, 1902, as an employee of the defendant, the *North Wisconsin Lumber Company,* engaged in its service in the work of riding upon the log carriage in the said mill while the same was in operation in the manufacture of lumber? *A.* Yes. (4) Was the said *Ole Odegard,* while so engaged on that day, thrown down upon the said carriage in such a way that as the carriage was impelled toward the band saw his left leg was cut off by said saw a short distance below the knee? *A.* Yes. (5) Did any want of ordinary care on the part of the plaintiff, *Ole Odegard,* contribute to produce his injury? *A.* No. (6) Was said Reodor Lee a competent engineer at the time of the accident by which the plaintiff *Odegard* lost his leg? *A.* No. (7) If said Reodor Lee was an incompetent engineer at the time of the accident by which *Ole Odegard* lost his leg, did the *North Wisconsin Lumber Company* know, or ought it

reasonably to have known, prior to the accident aforesaid that said Reodor Lee was incompetent. *A.* Yes. (8) Was the said injury to the plaintiff, *Ole Odegard,* caused by the incompetence or want of skill as an engineer on the part of said Reodor Lee? *A.* Yes. (9) Did the defendant, the *North Wisconsin Lumber Company,* furnish its employee, said *Ole Odegard,* at the time of the accident, in the said steam-feed apparatus which moved the carriage upon which he was riding, a reasonably safe appliance for the work in which he was engaged? *A.* No. (10) If the said steam-feed apparatus was not a reasonably safe appliance for the work in which said *Odegard* was engaged at the time he lost his leg, did the defendant, the *North Wisconsin Lumber Company,* know, or ought it reasonably to have known, prior to the said accident, that the said steam-feed apparatus was not a reasonably safe appliance for the work in which said *Odegard* was engaged when the accident occurred? *A.* Yes. (11) Would the majority of millowners and superintendents, under the circumstances of the situation in which *Odegard* was placed at the time of the accident, have reasonably expected and foreseen that the said steam-feed apparatus would be likely to cause an injury to the plaintiff, *Odegard,* by reason of the condition in which it then was? *A.* Yes. (12) Would the majority of millowners and superintendents, under the circumstances of the situation in which *Odegard* was placed at the time of the accident, have reasonably expected and foreseen that Reodor Lee would be likely to cause injury to the plaintiff, *Odegard,* by reason of the incompetency as an engineer of the said Reodor Lee? *A.* Yes. (13) Was the danger to be apprehended from riding the carriage in question at the time of the accident so great, immediate, and constant that a reasonably prudent person, under all the circumstances in which *Odegard* was then placed and acted, would not subject himself to it? *A.* No. (14) Was the defendant guilty of negligence in failing to furnish the plaintiff a reasonably safe appliance in the said steam-feed apparatus with which to do his work? *A.* Yes. (15) If you answer the last question 'Yes,' then was such negligence of the defendant the proximate cause of the injury? *A.* Yes. (16) What damages has the plaintiff, *Odegard,* sustained by reason of his said injury? *A.* $8,500."

Judgment for the plaintiff was rendered on this verdict, and the defendant appeals.

For the appellant there was a brief by *Bundy & Wilcox*, attorneys, and *Wickham & Farr*, of counsel, and oral argument by *R. P. Wilcox* and *James Wickham*.

For the respondent there was a brief by *Frank B. Lamoreux, Sam. J. Williams*, and *H. B. Walmsley*, and a supplemental brief signed *Sanborn, Lamoreux & Pray, Sam. J. Williams*, and *H. B. Walmsley*, and oral argument by *Mr. Walmsley* and *Mr. Lamoreux*.

WINSLOW, J.    A question of jurisdiction arises at the threshold of the case which must be first examined.

The action was commenced in Sawyer county.  This county at that time had two terms a year, one commencing on the first Monday in June and the other on the second Monday in November.  The summons was served June 11, 1904, and hence the action was not triable at the June term.  The answer was served in August following.  On the 6th day of October, 1904, an affidavit alleging prejudice of the presiding judge was filed by the defendant, and at the same time an order to show cause, returnable October 17th, was obtained and filed, requiring the plaintiff to show cause why all further proceedings in the action should not be stayed until the plaintiff should pay the taxed costs in two previous actions commenced by the plaintiff against the defendant on the same cause of action and which had been dismissed.  This motion was based on an affidavit made by one of the defendant's attorneys stating the facts.  After the filing of these papers the presiding judge called upon the Honorable W. C. SILVERTHORN, the presiding judge of the Sixteenth circuit, to hear the motion, and Judge SILVERTHORN attended and heard the motion at Hayward, Sawyer county, October 28th, and continued the same for further hearing, but in the meantime ordered that the plaintiff's proceedings be stayed, so far as

moving the case for trial at the next November term of court was concerned, until such costs were paid. The costs were not paid and the case was not noticed for trial at the November term, and on May 25, 1905, Judge SILVERTHORN made an order and sent it to the clerk of court of Sawyer county vacating the temporary stay and authorizing the plaintiff to notice the cause for trial at the June term. Thereupon the case was noticed for the June term by the plaintiff. On June 5th, being the last day of the November, 1904, term, the defendant appeared in court and moved that the case be sent to another county, but the motion was denied by the presiding judge. The action was called for trial at the June term on the 26th day of that month, at which time Judge SILVERTHORN attended and presided, and the defendant renewed the motion to send the case to another county as well as the motion for a stay of proceedings until the costs of the previous actions were paid, but both motions were denied.

The appellant's contention is that, because no judge attended to try the cause during the November, 1904, term, it became the duty of the presiding judge to change the place of trial under the terms of sec. 2625, Stats. 1898, as amended by ch. 101, Laws of 1901, and ch. 282, Laws of 1905. That section provides that the court shall change the place of trial of any action or special proceeding on the application of a party thereto who shall file his affidavit alleging prejudice of the presiding judge, but that, in lieu of granting such application, the judge may in his discretion retain the action or proceeding in the same court

"until the last day of the then current term if the application is made at a term at which the action is triable, or the next term if it is made in vacation, and in the meantime shall call upon some other judge or judges to attend and hold court during such current or next term for the purpose of exercising jurisdiction in all actions and proceedings in which applications for change of the place of trial have been made for such reason. And while so in attendance said judge may make all

orders and hear all applications and motions that may be brought on for hearing during the time he shall so attend. If such other judge or judges (as may be necessary or convenient) can so attend and hold court for such purpose at either such terms, the same shall be done with the same effect as if a change of venue to another circuit and a trial of such action or proceeding had been had therein; *but if no such judge shall so attend,* an order for a change of the place of trial shall be entered in each action and proceeding wherein proper application has been made on the last day of such term, and thereupon such change shall be made."

The general purpose of this section is reasonably clear; but,. unfortunately, its terms are by no means clear. The purpose was to secure to a party making an affidavit of prejudice a trial before an unprejudiced judge without the transfer of the case to another circuit, and at the same time to secure both parties against a long delay which might easily result were there no limitation on the time within which another judge might be called in. In other words, the purpose was to secure not only an unprejudiced trial, but a trial in the home circuit, provided a competent judge seasonably attends. It evidently contemplates that there shall always be one term during which the case can be tried in the home circuit, and that such term shall be a term at which the case is in situation to be moved peremptorily for trial. It clearly does not contemplate that the case shall be sent from the circuit after the lapse only of a term at which it could not be tried. In the present case the affidavit of prejudice was filed in the June term, at which term the case was not triable. At the time of filing the affidavit application was evidently made for a change of venue thereon, and at the same time application was made by the defendant for a stay of proceedings. Another judge was immediately called in and did attend and heard the motion for stay of proceedings, and granted it so far as to prevent the noticing of the case for trial at the next term. Thus the claim is that the defendant, after making its application

for change of venue, by its own act had been able to deprive the plaintiff of the privilege of having the case tried at the home circuit, a valuable privilege which the statute intended to secure to him. Such a construction of a statute should not be adopted unless the wording of the statute plainly and unambiguously demands it. The command of the statute is that the change shall be made "if no such judge shall *so attend;*" and the question is: Did Judge SILVERTHORN "so attend" when he came to Hayward and heard the motion for a stay of proceedings in October, 1904? It is argued that he did not, because he was not then called in to try the case, but only to hear a motion at a time when the case was not triable. We do not so construe the statute. The words "so attend" refer back to the previous provisions of the section, and to these provisions we must go to ascertain the meaning intended. After providing that the circuit judge may retain the action until the last day of the current term if the application is made at a term at which the action is triable, or the next term if it is made in vacation (this latter clause evidently covering an application made at a term at which the action is not triable), the statute says that the judge *"in the meantime* shall call upon some other circuit judge or judges to attend and hold court during such current term or next term *for the purpose of exercising jurisdiction* in all actions and proceedings in which applications for change of the place of trial have been made for such reason." The statute then gives such visiting judge power to hear and decide all matters brought on for hearing during his attendance, and provides that if such judge or judges "can *so attend* and hold court for such purpose at either such terms, the same shall be done with the same effect" as if an actual change of venue and trial in another circuit had been had. It will be noticed that the requirement is that the presiding judge shall in the meantime call in another judge for the purpose of *exercising jurisdiction* and not for the purpose of trying the case alone.

Here the application for change was made during the June term, and it was coupled with a motion requiring action of the court. Judge PARISH could not hear the motion because of the filing of the affidavit of prejudice, but he chose to retain the action in the county, as the statute allows. Therefore he called in Judge SILVERTHORN to hear the motion and Judge SILVERTHORN attended. By this course the command of the statute in terms was satisfied. Judge PARISH did in the meantime call upon another judge to attend and hold court for the purpose of *exercising jurisdiction,* and such other judge did attend and exercised jurisdiction, although he did not try the case. We think Judge SILVERTHORN did "so attend" within the meaning of the statute, and that there was no error in refusing to change the venue on the last day of the November term, and hence that the action was properly triable in Sawyer county at the June term, 1905.

The second contention of the appellant is that the trial court erred in not staying proceedings in the action until the costs of two former actions brought on the same cause of action had been paid. It appeared by the affidavits submitted that in January, 1903, the plaintiff commenced an action against the defendant to recover for the same injury, alleging in his complaint defective packing of the piston head as the only ground of negligence; that issue was joined and the case noticed for trial at the May term, 1903, at which time the plaintiff filed an affidavit of prejudice, and the case was sent to the circuit court for Chippewa county and came on for trial at the October term, 1903; that upon the trial the plaintiff offered to show that the port steam pipe was too small, but that this testimony was ruled out because not within the issue, whereupon the plaintiff asked and was granted leave within ten days to amend his complaint, alleging this new ground of negligence, upon payment of $46, and the cause was continued; that plaintiff failed to comply with the order and the action was thereafter dismissed, with costs taxed at $183.86; that execution on said judgment was issued and returned un-

satisfied; that plaintiff commenced another action against defendant for the same injury in February, 1904, alleging in his complaint as ground of negligence inadequate size of the port steam pipe, in which action issue was joined 'and the trial was commenced in June, 1904; that the engineer, Lee, was called as a witness and took on himself the entire blame for the accident, whereupon the plaintiff's attorney, being taken by surprise by his testimony, submitted to a voluntary nonsuit, and judgment was entered thereon, with costs taxed at $131.10, which have never been paid; that this action was immediately commenced and a complaint served, alleging the incompetence of Lee as an additional ground of recovery, and that defendant spent about $1,500 in procuring the attendance of witnesses and preparing for the trial of said previous actions.   It further appeared by plaintiff's affidavit that he has no property save a small homestead worth not more than $300, some household furniture, a pony, cart, cow, and calf, worth not exceeding $230 in all; that he has a wife and three minor children, only one of whom is able to earn wages; that he himself is unable to earn regular wages by reason of his disability and can earn barely enough to support his family, and has been unable to pay said judgments or to borrow money from others to do so.   The affidavits of the plaintiff and his attorneys tended to show that in their judgment plaintiff has a meritorious cause of action, and, further, that the various actions were prosecuted in good faith and not for the purpose of vexing or harassing the defendant.   Whether the present action should have been stayed or not was a question appealing primarily to the discretion of the trial judge, and his ruling thereon will not be reversed except for abuse of such discretion.

The general rule is that, where a plaintiff has been nonsuited and brings a second action for the same cause, a presumption arises either that the second action is vexatious or that the cause of action is without merit, and hence that a court will not allow the plaintiff to proceed with the second

action until he has paid the costs of the first. *Felt v. Amidon,*
48 Wis. 66, 3 N. W. 825. This presumption, however, yields
to proof showing that the prosecution of the second action is
in good faith, and that the failure of the previous action was
not due to infirmity in the cause of action, but to untoward
circumstances or excusable mistake.     When in connection
with such proof it appears that the plaintiff is absolutely un-
able to pay the previous costs on account of poverty and want
of credit, a case arises where the court in the exercise of a
wise and just discretion may fairly allow the second action to
proceed notwithstanding the previous costs are unpaid. Our
courts are open for the prosecution of meritorious and *bona
fide* causes of action in good faith. Poverty gives no license
to any one to vex or harass his neighbor with unfounded law-
suits.     On the other hand, poverty alone should not prevent
the needy litigant who presents a meritorious cause of action
from invoking the courts to do justice between him and his
neighbor. The facts presented on the motion were sufficient,
in our judgment, to justify the court in refusing to stay pro-
ceedings; at least we cannot say that there was any abuse of
discretion in the ruling.

No notice of injury, as required by subd. 5, sec. 4222,
Stats. 1898, was served by the plaintiff, and the present ac-
tion was not commenced until more than a year after the hap-
pening of the accident. The failure to give the notice was
pleaded as a defense, and the claim is made that the action
was barred by reason of failure to give the notice.     The
first action to recover damages for this injury was, however,
brought and the complaint served within the year. By ch.
307, Laws of 1899, sec. 4222, *supra,* was amended by adding
the following provision:

"When an action shall be brought and a complaint actually
served therein within one year after the happening of the
event causing such damages, the notice herein provided for
need not be served."

This provision is not ambiguous.  It does not provide that the action in which the recovery is finally had shall be brought within the year, but only that, when an action (meaning, of course, an action to recover for the same injury) shall be brought and the complaint served within the year, no notice need be served.  The condition was exactly fulfilled in the present case.  The statute does not make it essential that the previous complaint shall allege the same grounds of negligence as that upon which the recovery is obtained, nor can we add any such requirement by construction.  Under the terms of the statute, therefore, no notice was necessary.  Passing from these preliminary questions to the trial itself, we meet numerous exceptions to rulings upon evidence, some of which may well be treated in groups.

Evidence was received against objection and exception tending to show that the steam-feed apparatus was defective in not having attached certain drainage devices called bleeders or traps to drain the water out of the steam pipes at and near the valve, the idea being that by reason of the absence of these devices water accumulated in the valve and washed away the lubricating oil, thus making the valve and lever work hard and become difficult to move and the carriage hard to control.  The complaint in substance described in detail the saw carriage and the steam feed and controlling valve, as well as the method of operation of the whole apparatus, and charged that proper methods of construction required that the steam feed and valve should always be subject to the control of the operator or head sawyer; that by reason of the small size of the port pipe the apparatus could not be so controlled, but was likely to get beyond control and endanger the lives of employees working thereon; that there were other defects in construction rendering said machinery dangerous, known to the defendant but unknown to the plaintiff; that by reason of the careless and unskilful operation of the carriage by Lee, coupled with said defects in construction, Lee lost

control of the steam feed and the carriage moved with such velocity as to throw the plaintiff down and cut off his leg.

Now, the question is whether the allegation of the specific fact that the port pipe was too small precluded the plaintiff from showing that there were other defects in construction tending to render the apparatus not readily controllable, or, as the witnesses describe it, causing the lever to work hard and the carriage to jerk or stick. The general rule applicable to all actions is that the complaint must inform the defendant of the facts from which it is claimed his liability results, in order that he may prepare to make his defense advisedly. A plaintiff should not be allowed to charge negligence in one respect and upon the trial prove negligence in an entirely different respect. The rule does not, however, require the pleading of mere evidence, but only of the ultimate fact, nor does it require impossibilities. An operative upon or about a machine may know that it did not operate properly and that essential parts were not subject to control, but he may not know, nor be able to find out by reason of lack of expert knowledge, the precise cause of the irregular action, and experts themselves may differ on the question. In such cases the question is whether he must at his peril ascertain the initial cause of the defective operation and set it forth, or whether it is sufficient if he describe the machine and its operation and allege the ultimate fact that the machine was defective in that it was not at the time subject to control by the lever as it should have been, and that thereby it became uncontrollable, and that the accident resulted from such want of control. We think the latter course is sufficient, at least as against demurrer or objection upon the trial, although it may be that the pleading would be subject to motion to make it more definite and certain. It is true that in the present case the plaintiff alleged one specific fact which he claimed was a cause of the uncontrollability, but he also alleged that there were other defects unknown to him; and after all the signifi-

cant and substantial ground of his claim of negligence was plainly stated to be that the steam feed and carriage were defective because not subject to immediate and effective control by the sawyer, and we think that this was sufficient to entitle him to introduce evidence of defective construction in any respect which is shown to be effective to produce the uncontrollable condition. We find no error, therefore, in these rulings.

Two witnesses who worked on the same carriage at the time of the trial of the case in June, 1905, were allowed, against objection, to testify that the carriage "worked nice and smooth now." There was evidence in the record that there was no change in the condition of the machine from April, 1902, until the following season, but there was evidence that there had been a material change between March, 1903, and the time of the trial. The evident effect of the evidence that the carriage ran "nice and smooth now" would be that it could be claimed therefrom that the changes made had been in the way of repairs to the supposed defects after the accident. Such evidence is not admissible. *Lang v. Sanger,* 76 Wis. 71, 44 N. W. 1095. An expert witness was allowed to testify that the apparatus did not work perfectly in March, 1903, but bothered at times. This testimony was admissible, because the evidence showed that there had been no changes between the time of the accident and the time when the witness examined its operation.

A hypothetical question, asked by the court of this same witness, which assumed that there was some trouble with the steam feed, which caused the carriage to jerk and start and stop suddenly, and which asked whether it was practicable to remedy the trouble, was objected to as assuming facts not supported by the evidence. This objection is not tenable, because there was some evidence that the carriage would stop and start abruptly with a jerk. The witness Wallace, an expert, was allowed to answer a very long hypothetical question

against objection, and the ruling is assigned as error, but, as counsel has not seen fit to specify in what respect the question failed to correspond to facts in evidence, we do not deem ourselves called upon to search them out. One of the plaintiff's expert witnesses testified on cross-examination that the opening from the valve chamber into the port pipe did not wholly control the amount of steam going into the pipe, and was then asked why not. An objection to the question was sustained, but it is very clear that the question was entirely proper.

There were a number of rulings excluding expert evidence offered by the defendant which were clearly erroneous, and while in a number of these instances the evidence seems in fact to have got in after the ruling, we will briefly name the instances as a guide upon a new trial. In this class is the ruling excluding evidence that it was a physical impossibility for the difference in the size of the port pipe and the supply pipe to affect the working of the valve; that the difference would have no effect on the accumulation of water; that the Dittbenner valve (being the valve in use in this apparatus) is in general use in Wisconsin and in this section of country; and that it is manufactured and supplied by reputable makers of sawmill machinery. In this class also are the rulings excluding questions as to the effect of the running of the carriage against the bumper on the movement of the plug in the valve; the effect of water in the valve on the movement of the sawyer's lever; whether it is possible for the valve to reverse without movement of the lever; whether a certain six-inch pipe was in accordance with the usual construction; and whether it was physically possible for the carriage to run back after striking the bumper without movement of the sawyer's lever.

The defendant placed the plaintiff on the stand as an adverse witness, and sought to show by him that the action was prosecuted under a champertous agreement with his attorneys. The plaintiff produced the written agreement, which

contains nothing of a champertous nature, and testified that he had no other arrangement of any kind with his attorneys. Numerous questions were asked him as to some additional understanding with his attorneys, but he again denied that he had any other agreement except the written one, and finally the court sustained an objection to further examination upon the subject. There was no apparent prospect of any result from the examination. It seemed much like a mere fishing excursion, and we think that after the witness had twice denied that there was any agreement except the written agreement, and had produced it, the court was amply justified in stopping the examination.

The defendant moved for a directed verdict in its favor on the ground that no negligence was shown, and that, if negligence was shown, it was not the proximate cause of the injury. This motion was denied, and the defendant vigorously assails the ruling. Examination of the evidence satisfies us that the motion was properly denied. There was evidence on the part of three employees in the mill, who either worked on or about the carriage, that for months before the plaintiff's injury the carriage jerked. Dahl, a carriage rider, testified that at times the lever worked hard, and that at these times the carriage would jerk, nearly throwing him off; that the head sawyer complained of this to the superintendent; that the carriage was sticking and jerking on the morning of the injury, and that the head sawyer had to take hold of the lever three times to get the carriage back to the log deck; that the lever frequently worked so hard that the sawyer had to grip it with both hands. Fykrud, another co-employee, who was working as a setter on the other saw carriage on the day of the accident, but frequently had been a rider on the carriage in question, testified to the same condition of things in substance; that the carriage jerked when the sawyer stopped it; that it would stop abruptly and start abruptly with a little jerk, and he could not stop it at the place where he wanted

to. Johnson, another co-employee and a carriage.rider, testified to much the same effect as to the jerking of the carriage and as to the complaints to the engineer and superintendent, and that when the feed worked hard it would give the men on the carriage a jolt and would make it harder for the engineer to move his lever. The head sawyer, Magnuson, was not present, and his testimony was not taken. Here certainly was considerable evidence tending to show that the lever and valve frequently worked hard, so as to require much effort on the part of the sawyer to reverse the motion of the carriage, and that the mill superintendent had been notified of the fact. It is not disputed that the carriage ran against the bumper when Lee, the engineer, was testing it under full head of steam, and that the crash threw the plaintiff down with his leg in front of the saw. This crash must have resulted either because the lever was not reversed at all or because it was not reversed soon enough. Now, while the engineer, Lee, testified in substance that the carriage ran smoothly, and that it struck the bumper because he was rattled and did not reverse quick enough, he further testified that he did not pretend to remember just how it happened, and we think it was fairly within the province of the jury to decide whether the alleged difficulty in operating the valve was not in part the cause of Lee's failure to seasonably reverse the lever.

It is said further that there was no sufficient evidence of the incompetence of Lee, the engineer, or, if there was, that there was nothing to show that such incompetence had any causal connection with the accident. Lee, however, testified that he had no education as an engineer; that he had acted as engineer at this mill five seasons before the accident, having previously been a millwright; that when he went to work as an engineer he did not claim to have had any experience; that he was not then a competent engineer, and so told the superintendent of the company when he took the position, and the understanding was that they took all the responsibility; that he studied engineering books and papers while employed, and

did not know whether he would now call himself a competent engineer; that his duty as engineer required him to look after the machinery, including the steam feed, and see that it was working properly; that complaint was made to him on the morning in·question that the steam feed was not working right, and he went to investigate, and took hold of the lever and ran the carriage back and forth a few times and felt nothing wrong, when the sawyer told him to open the valve full and he did so, and it got away from him and the carriage struck the bumper; that after he did reverse he was too excited to stop it before it got to the saw and he lost control of it; that he never before ran any carriage operated by steam feed by the use of the lever at full speed or with a full head of steam.

We think there was sufficient evidence here to take the question of Lee's alleged incompetence to the jury, as well as the accompanying questions whether such incompetence was known, or should have been known, to the defendant, and whether the accident was either wholly or partially the result of such incompetence. In this connection it is proper to observe that the eighth question of the verdict is not well framed and should be amended upon a new trial. It asks whether the injury was caused by the incompetence or *want of skill* of Lee. The sole inquiry in this respect is whether it was proximately caused by the *incompetence* of Lee, and the question should be framed to put this question only. If the words "want of skill" mean incompetence in the question as framed, then they are surplusage. If they mean something different, then they are not only immaterial but make the question double.

The defendant requested the submission of a number of more specific questions as a part of the special verdict, but we think that, while the verdict as submitted was not ideal, still with the exception above noted and another now to be stated it fairly covered the issues.

Under the ruling of this court in *Lowe v. Ring,* 123 Wis.

370, 101 N. W. 698, it seems to be a very serious question whether questions 7 and 10 of the special verdict are not defective for duplicity. They ask whether the company knew or ought to have known. These are separate facts. Part of the jury may think the company knew and part that it ought to have known, but the entire jury may not agree on either fact. This question is not raised on the appeal and we do not decide it, but upon another trial separate questions should be asked covering these propositions.

It may be noted in passing that the twelfth question is not quite accurate, but the inaccuracy is favorable to the defendant. It is not necessary that the majority of millowners under the same circumstances should have reasonably foreseen that Lee's incompetence would be likely to cause an injury to the plaintiff, but only that it would be likely to cause an injury to another. *Meyer v. Milwaukee E. R. & L. Co.* 116 Wis. 336, 93 N. W. 6.

After the close of the evidence and before the argument of the cause to the jury, the defendant requested the giving of fifteen instructions, all of which were refused, and error is alleged upon the refusal to give several of them. It is attempted to justify the refusal of all the instructions upon the ground that they were not submitted in time within the provisions of Rule VIII of the Rules of the Circuit Court for Sawyer county. This rule reads as follows:

"Should a party to a jury trial desire the court to instruct the jury on a proposition of law he must submit his request in writing before he shall first rest his case, and he shall cite the authorities upon which he relies to support each proposition or the court will not consider such request."

If this rule be valid it seems to be a complete justification of the ruling of the court, but in order to be valid it must of course be reasonable. The right to present instructions applicable to the case and have them given to the jury if they

state the law correctly is an ancient right, recognized and guaranteed by our statutes (sec. 2853, Stats. 1898), subject to the limitation that they must be in writing. *Hacker v. Heiney*, 111 Wis. 313, 87 N. W. 249. No rule is reasonable which substantially impairs these rights. That this rule does this cannot be doubted. Under it a plaintiff must present his proposed instructions before the evidence for the defense is introduced and at a time when he cannot know what form that evidence will take, and a defendant must submit his instructions before plaintiff's evidence in rebuttal is heard. To know what instructions would be proper or applicable in advance of the giving of the testimony to which it is to apply, the counsel must be a prophet as well as a lawyer. There may be such lawyers, but they form the exception rather than the rule in this jurisdiction. Nor can it be held that a request to give a correct instruction can be denied without error simply because an authority is not cited to enforce it. In both respects we regard the rule as entirely unreasonable and hence void.

Among the instructions so requested are the following, which stated correct legal principles applicable to the case and were not covered by the general charge:

"(7) You are instructed that you cannot find that Reodor Lee was incompetent unless you find that he was so deficient in the qualifications necessary to perform his work as an engineer as would make it an act of negligence on the part of any one to employ him in such capacity who had knowledge of such disqualifications. . . . (9) You are instructed that, if the plaintiff failed to exercise any want of ordinary care, however slight, which contributed to his injury, then you must answer question number 5 'Yes.' (10) You are instructed that the burden of proof as to questions numbered 3, 4, 7, 8, 10, 11, 12, 14, and 15 is upon the plaintiff to satisfy your minds by a fair preponderance of the evidence to a reasonable certainty that said questions should be answered in the affirmative, and unless you are so satisfied you should answer said questions 'No.'"

The error in refusing the tenth requested instruction is emphasized by the fact that the court in its general charge on the subject of the burden of proof gave only the positively erroneous charge that each question "must be answered according to the preponderance of the whole evidence and all the circumstances of the case." *Anderson v. Chicago B. Co.* 127 Wis. 273, 106 N. W. 1077.

Another instruction was asked upon the subject to the effect that disputed questions of fact could not be determined upon mere conjecture, but that there must be some direct evidence of the fact or evidence tending to establish circumstances from which the jury could reasonably say that the inferences therefrom *clearly* preponderate in favor of the existence of the fact. This instruction is inaccurate, in that it requires a *clear* preponderance of the evidence in order to justify a finding. This is not the rule in civil actions, except in cases of alleged fraud or actions brought to set aside solemnly executed written instruments.

Another requested instruction was to the effect that the jury could not find the engineer, Lee, incompetent from the fact that he may have been guilty of one *or more* isolated acts of negligence. This was too broad a statement. Proof of a single act of negligence is not sufficient to raise an inference of incompetence (*Kliefoth v. N. W. I. Co.* 98 Wis. 495, 74 N. W. 356), but proof of many such acts may, and the instruction might easily be construed as meaning that incompetence could not be inferred from proof of many acts of negligence.

The following instruction was asked, and seems to contain a substantially correct statement of the law (*Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124):

"(8) You are instructed that the duty of the defendant was to use ordinary care and diligence in respect to employing competent servants, having regard always to the character of the particular service and the consequences that might result

from incompetency in such service. If the defendant exercised such care and diligence in retaining in its employ Reodor Lee at the time of the accident, the defendant was not guilty of negligence in so doing, notwithstanding the fact that Reodor Lee may have been incompetent at such time, and notwithstanding the fact that an injury to the plaintiff may have resulted by reason of such incompetency."

However, as the instruction was general and does not apply to any question of the verdict, the refusal to give it was not error.

An instruction to the effect that, if Lee reversed the lever and caused the carriage to run towards the saw just prior to the accident, the jury could not find that negligence in the construction of the steam feed was the proximate cause of the injury, was properly rejected, for the reason that, as before indicated in this opinion, we think the evidence was sufficient to take to the jury the question whether the alleged sticking of the valve was not instrumental in producing Lee's failure to reverse the lever in proper time. Upon the question of proximate cause the court instructed the jury that it was "the immediate, direct, actual, natural, efficient, and real cause." This was inaccurate but not prejudicial, because it placed a heavier burden on the plaintiff than the correct rule, which has so often been laid down by this court that we do not repeat it here. Moreover, the elements of fact constituting proximate cause having been found in answer to specific questions, an inaccuracy in the definition is not harmful. Upon another trial, however, if a definition be given it should be the correct one.

A claim is made that the verdict is excessive, but we are unable to so regard it.

We find no other contentions that require discussion.

*By the Court.*—Judgment reversed, and action remanded for a new trial.