McHatton, Respondent, vs. Estate of McDonnell, Ap-·
pellant.

*November 13—December 4, 1917.*

*Witnesses: Competency: Transactions with ˙decedent: Evidence: In-*
*structions to jury: Special verdict: Harmless errors: Executors*
*and administrators: Claims: Parent and child: Compensation*
*for services: Express agreement: Abandonment of contract.*

1. Upon the trial of a daughter's claim against her mother's estate
   for services rendered under an express contract, another daugh-
   ter, who had also filed a claim against the estate, was not in-
   competent, under sec. 4069, Stats., to testify to a conversation,
   relating to the contract in question, had between the witness
   and a third sister and the mother in the absence of the plaintiff.
2. Nor was another witness for the plaintiff who had a conversation
   with the decedent rendered incompetent, under said sec. 4069,
   to testify thereto by the fact that plaintiff was present at the
   time, where she in no way participated in the conversation.
   *Holway v. Sanborn,* 145 Wis. 151, distinguished.
3. Error, if any, in refusing to strike out plaintiff's testimony that
   she expected pay for her services and that such expectation was
   based upon what her mother had said, was not prejudicial to
   defendant, the right of recovery being based upon an express
   contract of which there was ample evidence.
4. A requested instruction to the jury which is not applicable to any
   question in the special verdict may properly be refused.
5. Where upon the practically undisputed facts there was no pre-
   sumption that services rendered to a mother by her daughter
   (who, though sixty years old, at her mother's call broke up her
   own home and business and under trying circumstances per-
   formed such services) were gratuitous, or, if there was such a
   presumption, it was rebutted, there was no prejudicial error in
   refusing to give a requested instruction as to such presumption.
6. Where no instruction was requested relating to a question in the
   special verdict as to the value of plaintiff's services, there was
   no error in instructing the jury generally that they were to use
   their best judgment and allow just compensation.
7. Where a claim for services was upon an express contract for an
   agreed amount, an instruction as to just compensation was im-
   material and not prejudicial to defendant.
8. Failure to instruct the jury as to the preponderance of evidence
   on a certain question was not error where no such instruction

was asked, and especially where there was practically no conflict in the evidence.

9. A claim for services was based upon an express contract by which for an agreed sum a daughter was to come and stay with her mother until the mother's death or so long as the mother should desire. After about a year the mother sold the home property to a son, who took possession, agreeing to support and care for the mother during her life. Findings by the jury that the daughter was willing at that time to continue to live in the home and care for it and her mother as she had been doing, and that she did not consent voluntarily to abandon the arrangement previously made with her mother, are *held* to be sustained by the evidence.

10. Refusal, in such case, to submit to the jury special questions as to whether the mother at any time prevented plaintiff from continuing to care for her and from carrying out her part of the agreement, and as to whether such agreement was abandoned by mutual consent, was not error, the issues in that regard being fully covered by the findings above mentioned.

APPEAL. from a judgment of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

The respondent filed a claim against the estate of Mary McDonnell, deceased, appellant here, for services performed by her upon an alleged express agreement to the effect that if respondent would leave her home and take care of her mother and sister during their lives, or so long as the mother should desire such services, she should be paid $1,000.

The claim was originally filed for two causes of action: (1) for reasonable value of services, and (2) for the sum of $1,000 upon express agreement. The former was abandoned on the trial, the respondent electing to stand on the latter.

The jury returned the following verdict:

"(1) Was *Celia McHatton* called by Mary McDonnell, her mother, to come to her home on or about June 26, 1911, to take charge of it and to take care of her; and did *Celia McHatton* at once go and take upon herself these duties? *A.* Yes (by the court).

"(2) Did Mary McDonnell say in the presence of *Celia McHatton* that her compensation for the work specified in the first question would be $1,000? *A.* Yes.

"(3) If you answer the last question 'Yes,' answer this question: Did *Mrs. McHatton,* in reliance upon said promise, enter upon the performance of said work and continue to discharge it until April 8, 1912, when Mrs. McDonnell's son, M. E. McDonnell, took possession of the home property which he had purchased from Mary McDonnell February 7, 1912, and as a part of the consideration for the property had in writing agreed to support and care for his mother during life? *A.* Yes.

"(4) Was *Mrs. McHatton* willing, at the time when M. E. McDonnell took possession of the property, to continue to live in the home and care for it and her mother as she had been doing? *A.* Yes.

"(5) Did *Celia McHatton* consent voluntarily to abandon the arrangement made with her mother to take care of the home and her? *A.* No.

"(6) What was the value of the services performed by *Mrs. McHatton* per week under all the circumstances? *A.* Twelve dollars a week per week."

Judgment was rendered in favor of the respondent for $1,000, from which this appeal was taken.

For the appellant there was a brief by *McGeever & McGeever* of Dodgeville and *Fiedler & Fiedler* of Mineral Point, and oral argument by *E. C. Fiedler, J. D. McGeever,* and *W. C. McGeever.*

For the respondent there was a brief by *Frank Jenks* of Brodhead and *Jones & Schubring* of Madison, and oral argument by *Burr W. Jones.*

KERWIN, J. The appellant seeks to reverse the judgment rendered upon several alleged errors assigned, which will be considered.

1. It is contended that the court erred in the admission of evidence of Lizzie Thoni, a sister of respondent. Mrs. Thoni was allowed to testify under objection that her sister Mary Ann said to her, in the mother's presence but in the absence of the respondent, that "We decided, mother has decided, that *Mrs. McHatton* will come here and take care of

her and manage affairs here and mother will give her a thousand dollars for coming and managing;" that her "mother said: 'I could not have *Celia* break up her home and come up here and do the work and manage for me, so I am going to give her a thousand dollars' for however long she lived. She supposed she would stay with her until she died, that is till my mother died."

It appears from the record that Mrs. Thoni had also filed a claim against the estate and that the respondent here was a witness for her, and it is claimed by appellant that the testimony referred to was not competent and should have been excluded under sec. 4069, Stats. There was no error in admitting the evidence. The fact that Mrs. Thoni had filed a claim against the estate did not render her evidence incompetent. Moreover, during this conversation the respondent was not present, but the mother and two sisters were discussing plans, and it was talked between the mother and Mary Ann that the respondent should have $1,000 for performing the services referred to in the claim filed by the respondent. The testimony of Mrs. Thoni was also corroborated by several other witnesses.

It is claimed by appellant that George Haines, witness for respondent, was permitted to testify, under objection, to a conversation between respondent and her mother, and that the witness exercised an influence in respect to this conversation; therefore his testimony should have been excluded under the rule of *Holway v. Sanborn,* 145 Wis. 151, 130 N. W. 95. The *Holway Case* is not controlling under the facts of the instant case. The Haines conversation, as appears from the record, was not a conversation between respondent and deceased, but was a conversation solely between Haines and the deceased, and, while it appears the respondent was present, she in no way participated in such conversation. An examination of the *Holway Case* shows that it has no bearing upon the instant case.

It is also contended that the court erred in permitting the respondent to testify that she expected pay for her services and that such expectation was based upon what her mother had said. While it appears that this testimony was not objected to when given, it is insisted that it should afterwards have been stricken out, and that there was error in refusing to do so. It seems that the evidence was drawn out by appellant's counsel. Moreover, from the whole record it does not appear that respondent's expectation was based upon incompetent testimony. It may have been based upon evidence of statements made by the mother to others than respondent in conversations in which respondent took no part. *Estate of Kessler,* 87 Wis. 660, 666, 59 N. W. 129. But in any event we are convinced that the evidence, even if incompetent, could not have prejudiced the appellant. The right of recovery was based upon an express contract to pay $1,000, and there was ample evidence to support such contract.

2. It is claimed that the court erred in refusing to instruct the jury as follows:

"I instruct you that if you find from the evidence that the plaintiff and her mother, from the 26th day of June, 1911, to the 8th day of April, 1912, lived together in the same house as one family, the relationship raises a presumption that any services performed by the plaintiff for her mother while they were living together in the same house as one family were intended to be rendered gratuitously, that is, without compensation; and in order to overcome that presumption it is incumbent upon the plaintiff to convince you that an express contract to compensate for such services was in fact made, and the law requires the plaintiff to establish such contract by evidence which is positive and direct, or by circumstantial evidence substantially equivalent to positive and direct testimony."

There was no error in refusing this instruction for several reasons. In the first place it did not apply to any question in the special verdict, and for that reason, if for no other, it

was properly refused.  *Goesel v. Davis,* 100 Wis. 678, 680, 76 N. W. 768; *Fox v. Martin,* 104 Wis. 581, 586, 80 N. W. 921; *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563; *Johnson v. St. Paul & W. C. Co.* 126 Wis. 492, 502, 105 N. W. 1048; *Odegard v. North Wis. L. Co.* 130 Wis. 659, 684, 685, 110 N. W. 809.  Moreover, in the case at bar the respondent, about sixty years of age and having her own family, broke up her home and business and upon call of deceased, under the most pressing and trying circumstances, performed the services in question.  In the case at bar, upon the facts proved and established practically without dispute, there was no presumption that the services were gratuitous, and if any presumption existed it was rebutted, hence there was no error in refusing to charge as requested.  *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129; *Williams v. Williams,* 114 Wis. 79, 89 N. W. 835.  It is very clear upon the whole record and the evidence produced that there was no prejudicial error in this regard.

3. It is further assigned that the court erred in instructing the jury as follows: "I cannot instruct you upon that except to say this: Use your best judgment under all of the circumstances, and allow per week what you are convinced under those circumstances would be just compensation." This instruction was given with reference to the sixth question of the special verdict with respect to the value per week of the services performed by the respondent.

Complaint is made because the court failed to instruct the jury particularly on the rule of value of services.  Counsel for appellant asked no instruction upon this point, and in the absence of such request the court was not obliged· to give more specific instructions.  However, the instruction was immaterial and not prejudicial because the claim was for an agreed amount.

It is also said that the court should have ·instructed on the preponderance of the evidence under this head.  No such

instruction was asked, and besides there was practically no conflict in the evidence on the subject.

4. It is also insisted that the court erred in refusing to change the answer of the jury to question number 5 from "No" to "Yes." It is said that there is no testimony to support the answer of the jury to this question. We cannot agree with counsel in this regard. It is clear from the evidence that the respondent changed her mode of living in order to perform the services under the agreement. She continued to perform the services under this agreement from June 27, 1911, to April 18, 1912. The evidence is clear that she was willing to perform until the death of her mother and expected to do so. In February her mother and the son made an agreement, without consulting the respondent, by the terms of which the son was to move with his family into the mother's house and take care of her. This agreement practically displaced the respondent and prevented her from continuing to perform her agreement. We are convinced from a careful examination of the record that the answer to the fifth question was supported by sufficient evidence and should not be disturbed.

5. It is claimed that the court erred in refusing to submit the following question to the jury: "Did the mother at any time prevent the plaintiff from continuing to care for her mother and from carrying out her part of the agreement?" The fourth question submitted to the jury practically covered the point involved in this request. There is sufficient evidence to support the jury's answer to the fourth question submitted. The contract made by respondent's mother with her son was inconsistent with further performance by respondent, and she was in effect prevented by the deceased from further performance. The contract between respondent and deceased was that respondent should stay and perform services during her mother's life or so long as the mother should desire.

6. Error is assigned because the court refused to submit the following question: "If you find that any agreement was made between the plaintiff and her mother by which the plaintiff was to take care of her mother, was such agreement canceled or abandoned by the mutual consent of the plaintiff and her mother on or about April 8, 1912?" There was no error in refusing this question. The issues were fully covered by the questions submitted and we deem discussion unnecessary. We think the case was fairly tried and no prejudicial error committed, therefore the judgment must be affirmed.

*By the Court.*—Judgment affirmed.