RENICH and another, Respondents, vs. KLEIN and others, Defendants: KEMPKIN, Administrator, Appellant.

*December 8, 1938—January 10, 1939.*

124

For the appellant there was a brief by *Waller & Ruzicka* of Burlington, and *Vilas H. Whaley* of Racine, and oral argument by *Mr. Whaley*.

For the respondents there was a brief by *Rubin, Zabel & Ruppa* and *Wm. B. Rubin,* all of Milwaukee, and oral argument by *Mr. John W. Zabel* and *Mr. Rubin*.

NELSON, J.   The principal question on this appeal is whether the relationship between Herman J. Flentz and August Giesing, at the time of the collision, was that of host and guest, principal and agent, or master and servant.   In the complaint it was alleged that Flentz was the agent and servant of Giesing.   The court found that Flentz was the agent of Giesing.   That finding of the court is vigorously assailed.   A recitation of the material facts relating to the question therefore becomes necessary.   On June 14, 1937, Flentz who was then nineteen years of age, was employed by Echo Beverage Company owned by the Kleins.   His duties were quite varied.   On June 14, 1937, he was driving a Chevrolet truck belonging to the Kleins.   Mr. Klein was with him up to the time that the truck was stopped in front of Hoffman's place in Waterford.   Mr. Klein went into that place to solicit business, while Flentz remained in the cab of the truck.   It was then raining.   While Flentz was waiting for Mr. Klein, Giesing came along.   He was an old man, seventy-one years of age.   He got into the cab of the truck without any invitation and hurriedly closed the door.   What then happened appears from the testimony of Flentz:

"*Q*. What did he say when he got into the cab? *A*. He said something.

"*Q*. What did he say? *A*. He said I should drive him up to the corner because the bus was waiting there.

"*Q*. How far was the truck from the bus or from the corner? *A*. About three fourths of a block.

"*Q*. When he said you should drive him up to the corner, what did you do then? *A*. I started up.

"*Q*. Did he get in after you said he could? *A*. He was in a hurry and he got right in.

"*Q*. What did you do after he got in? *A*. I started up the street.

"*Q*. What did he say while you were in there? *A*. He didn't say anything at all after that.

"*Q*. Tell us the entire conversation between you as he was entering the truck? *A*. I can't remember the exact conversation, but he was almost pleading and he seemed much in a hurry and very anxious to catch the bus. He was an old fellow and I felt sorry for him and naturally I wanted to help him catch the bus."

According to Flentz, nothing at all was said by Giesing after he got into the truck. Before reaching the corner, the bus started on its way and Flentz followed it for a distance of about half a mile. Flentz then told Geising that it was no use, apparently referring to his inability to overtake the bus. Giesing said nothing. It was then raining very hard. Flentz slowed down and turned to the right into another street. In so doing, the rear end of the truck skidded to the left and into the plaintiffs' car which was approaching and about to make the turn. There is no testimony other than that of Flentz relating to the relationship between him and the deceased at the time of the accident. It is our conclusion that this testimony falls far short of proving that at the time of the accident the relation of principal and agent existed between Giesing and Flentz and that it shows nothing but a relationship of host and guest between them. Summarizing the entire conversation between Giesing and Flentz as he entered the truck, Flentz testified:

"I can't remember the exact conversation, but he was almost pleading and he seemed much in a hurry and very anxious to catch the bus. He was an old fellow and I felt sorry for him and naturally I wanted to help him catch the bus."

Nothing was said by Giesing after that. This testimony shows only an act of friendly courtesy which Flentz ex-

tended to Giesing because he felt sorry for him and naturally wanted to help him out. The fact that Giesing got into the car without invitation is of no importance. See *Mitchell v. Raymond*, 181 Wis. 591, 599, 195 N. W. 855, in which it was said:

"We must also decline to recognize any such possible distinction as is spoken of in several decisions between the guest who asks for a favor and the guest who is first invited by the host."

See also 5 Am. Jur. p. 627, § 230, where it is said:

". . . Since one riding in an automobile is no less a guest because he asked for the privilege of doing so, the same obligation of care is imposed upon the driver as in the case of one expressly invited to ride."

So the fact that Giesing requested of Flentz the courtesy of transporting him to the bus is of no controlling materiality.

In determining whether agency exists, the matter of control or the right of control, by the person alleged to be the principal over the person alleged to be the agent, is deemed of great importance by the courts.

In *Bennett v. Nebel*, 199 Wis. 334, 336, 226 N. W. 395, it was said:

"Mrs. Parker had not become the employee of the plaintiff. She was either the host of the plaintiff or she occupied toward her the relationship of a carrier of passengers for hire. The negligence of Mrs. Parker cannot be imputed to the plaintiff in either case, unless the plaintiff exercised control over the management of the car by Mrs. Parker or in some other way co-operated in the course of conduct that produced the collision and consequent injuries to the plaintiff."

In *Gehloff v. Kandler*, 204 Wis. 464, 465, 234 N. W. 717, it was said:

"The jury found upon sufficient evidence that Mrs. De Marce drove the car at her [Mrs. Kandler's] request; that

it was in the interest of appellant's business and that she had the right of control and direction." [6]

In *Schmidt v. Leary,* 213 Wis. 587, 590, 252 N. W. 151, it was said:

"The plaintiff as the owner of the car had the right to control the actions of the driver in driving it on the trip, whether she had occasion to exercise it or not."

In the two cases last cited, findings of agency were held warranted. In *Georgeson v. Nielsen,* 214 Wis. 191, 196, 252 N. W. 576, it was said:

" 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. . . .

" '(a) The relationship of agency is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.

" '(b) It is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes upon them as a result of it. On the other hand, there is not necessarily an agency relationship because the parties to a transaction say that there is, or contract that the relationship shall exist, or believe it does exist. Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary.' Restatement, Agency, § 1, pp. 7, 8."

It is further said in the Restatement, ch. 1, § 14:

"A principal has the right to control the conduct of the agent with respect to matters entrusted to him. . . .

"The extent of the right to control the physical acts of the agent is an important factor in determining whether or not a master-servant relationship between them exists. . . .

"*c.* There are many relationships in which one acts for the benefit of another which are to be distinguished from agency by the fact that there is no control by the beneficiary."

Ch. 7, § 225: "*c.* The fact that one assists another, does something for his benefit, or submits himself to the control of such other does not constitute such person a servant of the other. There must be consent or manifestation of consent to the existence of the relationship by the person for whom the service is performed, as stated in sec. 221."

Ch. 7, § 221: ". . . To constitute the relationship of master and servant, the one for whom the service is rendered must consent or manifest his consent to receive the services as a master."

In 5 Am. Jur. p. 780, § 492, it is said:

". . . Generally, however, the negligence of the driver cannot be considered against the occupant injured in a collision with another car unless that negligence was the sole cause of the accident, unless the driver was the agent or servant of the occupant and subject to his direction and control at the time and place of the injury, or unless the driver and occupant were engaged in a joint enterprise under circumstances which gave a right to share in the control of the automobile. It is only in those instances where the passenger or guest has some control or authority over the operation of the car that the negligence of the driver may be imputed to him."

In an annotation in 42 A. L. R. p. 1417, it is said:

"But the rule of *respondeat superior* rests upon the power of control and direction which the principal has over the subordinate, and so can only be applied where the person sought to be held as master had the power of controlling and directing the servant. And this power of control and direction must be as proprietor, in the sense of stopping the work, or of continuing it and determining the way in which it shall be done, with reference to the method of reaching the result, and not merely the result to be reached."

Our own decisions, as well as the well-established rule, are to the effect that the question of control by one over the person alleged to be an agent is a very important indicium.

Under the testimony adduced, there is no evidence whatsoever that Giesing had any power to control, or right to

control, the actions of Flentz or that either of them were conscious of any relationship between them other than that of host and guest, resulting from a friendly and courteous favor done by a young man to an aged gentleman. To spell agency out of what happened in this case would hereafter render it both unwise and hazardous for one to request another,—a friend, a neighbor, or a stranger to do him a friendly courtesy or to perform a friendly act, if such courtesy or act involves the use of the other's automobile. It is our conclusion, therefore, that the motion of the defendant, Kempkin, as administrator of the estate of August Giesing, deceased, to direct a verdict, should have been granted.

So much of the deposition as related to conversations with Giesing was objected to as incompetent under the provisions of sec. 325.16, Stats. We have examined numerous decisions and find no authority to support defendant's contention that the evidence of Flentz was incompetent and therefore inadmissible. Compare *Engmann v. Estate of Immel,* 59 Wis. 249, 18 N. W. 182; *Pritchard v. Pritchard,* 69 Wis. 373, 34 N. W. 506; *Hanf v. Northwestern Masonic Aid Asso.* 76 Wis. 450, 45 N. W. 315; *Anderson v. Laugen,* 122 Wis. 57, 99 N. W. 437; *Franklin v. Killilea,* 126 Wis. 88, 104 N. W. 993; *Dilger v. Estate of McQuade,* 158 Wis. 328, 148 N. W. 1085; *McHatton v. Estate of McDonnell,* 166 Wis. 323, 165 N. W. 468; *Schultz v. Culbertson,* 125 Wis. 169, 103 N. W. 234.

Whether the court, under the situation which existed, erred in refusing to submit the issues to the jury, we deem it unnecessary at this time to decide, especially in view of our conclusion that the motion of the defendant, Kempkin, to direct a verdict should have been granted. It will be recalled that the defendant, Kempkin, moved to direct a verdict in his favor and that the plaintiffs moved to direct a verdict in their

favor, except as to the question of damages.  Sec. 270.26, Stats., provides:

"*Motion for directed verdict waives jury trial.*  Whenever in an action tried before a jury all the parties to the action shall, without reservation, move the court to direct a verdict, such motions shall, unless otherwise directed by the court before the discharge of the jury, be considered as equivalent to a stipulation by the parties waiving a jury trial and submitting the entire case to the court for decision of the facts as well as the law."

Whether the plaintiffs' motion for a directed verdict as to all issues except those of damages was a motion "without reservation" for a directed verdict may involve some doubt. We shall reserve the question until it is presented in some case where its determination is of controlling importance.

*By the Court.*—Judgment reversed, and cause remanded with directions to the trial court to direct a verdict in favor of the defendant, Joe Kempkin, as administrator of the estate of August Giesing, deceased.

FRITZ, J., dissents.