FREDERICK W. PANGBORN, PLAINTIFF IN ERROR, v. SHEFFIELD PHELPS, DEFENDANT IN ERROR.

Submitted March 27, 1899—Decided June 19, 1899.

The plaintiff was managing editor of a daily newspaper. The defendant was editor-in-chief of the same newspaper. Both were employes of a corporate association that owned the newspaper. The function of the editor-in-chief was one of general direction and supervision, especially of the policy of the paper and of editorial matter, and included some editorial writing. The function of the managing editor was to superintend the making up of the paper and to write some editorials. The evidence on behalf of the plaintiff tended to prove that the plaintiff performed for the defendant, at his request, during time not occupied by work of the managing editor, a part of the duties incumbent upon

the defendant, as editor-in-chief. *Held,* that there was evidence to go to the jury of an implied contract to pay the value of the services so rendered by the plaintiff to the defendant, and that a judgment of nonsuit, founded on a supposed want of consideration, was erroneous.

On error to Hudson Circuit.

For the plaintiff in error, *Robert O. Babbitt* and *Robert L. Lawrence.*

For the defendant in error, *Charles L. Corbin* and *William H. Corbin.*

The opinion of the court was delivered by

ADAMS, J.   This suit was brought to recover on an alleged implied contract to pay for services rendered by the plaintiff for the defendant at his request.   The plaintiff was nonsuited because it appeared to the trial judge that the facts in proof afforded no evidence from which a jury might find that such an implied contract existed.  · We think that this conclusion was erroneous; that the proof was such as to cast upon the jury the duty of determining whether there was such an implied contract, and that the judgment of nonsuit should be reversed.

The declaration is in the form of the common counts, with the following statement of the particulars of the plaintiff's demand : " Sheffield Phelps to Frederick W. Pangborn, Dr. To editorial work of the editor-in-chief of the Evening Journal of Jersey City from December 1st, 1895, to May 1st, 1896, $2,500." It appears from the plaintiff's proofs, which for the purposes of this inquiry must be taken as true, that on December 2d, 1895, Sheffield Phelps, the defendant, became part proprietor and editor-in-chief of the " Evening Journal," a daily newspaper of Jersey City.   The plaintiff, prior to and until this date, had been managing editor at a salary of $70 per week, and continued in that position at the same pay until May 1st, 1896, when he was assigned by Mr. Phelps to another duty.   The function of the editor-in-chief was one of

general direction and supervision, especially of the policy of the paper and of editorial matter, and included some editorial writing. The duty of the managing editor was to superintend the making up of the paper and to write some editorial articles. Both the editor-in-chief and the managing editor were employes of the Evening Journal Association, a corporation that owned the paper.

The engagement out of which the implied contract to pay is said to have arisen was thus testified to by the plaintiff: "Two or three days after his taking hold of the paper Mr. Phelps came to my desk and asked me if I would engage to carry on his work for him until such time as he could get his hand in or make other arrangements. I told him I could do so and would do it.

"*Q.* Did you do it?

"*A.* I certainly did.

"*Q.* From what time to what time?

"*A.* From the beginning of December, 1895, until the 1st of May, 1896."

The plaintiff further testified that between these dates he did most of the editorial writing and handled all of the editorial copy; that only about two columns in all were written by anyone else; that he devoted, on an average, five hours a day to the work of editor-in-chief, outside of the time required for the discharge of his duties as managing editor; that there were on some days three or four columns of editorial writing to be provided, and that he might do from half a column to a column of it in the editorial rooms, in odd moments when he was not otherwise employed; that he devoted to the work of editor-in-chief four or five hours every night at home and brought his copy to the office every morning; that he never told Mr. Phelps of his night work, and did not think that Mr. Phelps knew about it; that, so far as he, the plaintiff, knew, he himself determined the position that the "Evening Journal" was to take on all subjects, public and private, and that Mr. Phelps was away a good deal and furnished only a few small items of editorial matter, some of which were ac-

cepted and some rejected. It further appeared that the plaintiff rendered no bill for his services on the work of editor-in-chief until after his discharge, which took place on August 1st, 1896, and that he then rendered it, not to Mr. Phelps, but to the Evening Journal Association. He subsequently withdrew this bill and rendered another to the defendant for the same services.

The evidence above detailed tended to show that the plaintiff engaged the defendant to aid him in his work as editor-in-chief, especially in the supervision and preparation of editorial matter; that the plaintiff rendered daily service under this engagement during a period of five months, and that this service was performed in time not required for the discharge of the plaintiff's other and distinct duties as managing editor. Such an engagement would be legal. Out of it there would arise an implied contract to pay the value of the services. This contract would bind not the Evening Journal Association, but the defendant.

The case of *Voorhees* v. *Executors of Woodhull,* 4 *Vroom* 494, which was referred to by counsel for the defendant, was essentially different from that now under consideration. It was an action brought by an employe against her employer to recover upon an alleged implied contract to pay for services that were said to be additional to those called for by the contract of employment. It was held that no implied contract existed because there was a prior express contract embracing the identical subject. The same rule is stated in *Conover* v. *Stillwell,* 5 *Id.* 54.

The judgment of nonsuit is reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Dixon, Garrison, Gummere, Ludlow, Van Syckel, Adams, Bogert, Hendrickson, Nixon, Vredenburgh. 12.