WILLIAMS, Respondent, vs. WILLIAMS, Administratrix, Appellant.

114    79
114    ¹381

*March 12—April 1, 1902.*

*Estates of decedents: Claim for services rendered by a brother: Implied contracts: Presumptions.*

1. As between brothers, between forty and fifty years of age, each married, each for years managing his own individual affairs, and neither being dependent upon the other, there is no presumption that services, rendered after the arrival of claimant's family, in superintending the erection of houses were gratuitous, although before the arrival of his family, and for the first six weeks of such services, claimant had been living with his brother as a guest.
2. The presumption that such services were not gratuitous not arising, a contract to pay their reasonable value is implied from the mere fact of the rendition of valuable services by one brother to another, with the knowledge of such other.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is a claim by *John C. Williams* against the estate of his deceased brother, Daniel A. Williams, who died July 10, 1895. The claim, as filed, was to recover for nine months'

services "in planning, superintending, and building houses" on certain lots in Ashland, at $125 per month, from May 1st, 1892, to February 2nd, 1893, $1,125; for three months' services upon the same premises from May 1st, 1893, to August 1st, 1893, at $65 per month, $195. The claim, as filed, also contained other miscellaneous items, which, however, were disallowed; and, as there is no appeal on the part of the plaintiff from the judgment, it is unnecessary to state the items here. The answer of the defendant contains a general denial, and also an allegation of payment, and a number of counterclaims for moneys advanced by the deceased to the plaintiff, aggregating over $4,000; also a counterclaim for rent of a dwelling house in Ashland from September 1, 1892, to December 1, 1895, amounting to $468. After a trial in the county court, the plaintiff's claim was allowed at $375.40, whereupon both parties appealed to the circuit court. The case involving the trial of a long account, it was referred, and after a long trial the referee made his report, in which he found that the plaintiff performed ten months' services for the deceased between May 1, 1892, and August 1, 1893, in planning, superintending, and building certain houses, and in other work about the premises, of the value of $75 per month, amounting to $750 in all, which sum the plaintiff was entitled to have allowed against the estate of the deceased. The referee further found that the plaintiff was indebted to the estate of the deceased in the sum of $410 for rent of a house occupied by the plaintiff and his family from October 1, 1892, to December 1, 1895, and that all other claims and charges made by the parties against each other had not been proven. Upon these findings of fact the referee concluded that the plaintiff was entitled to judgment against the estate of the deceased for the sum of $340, with interest from February 24, 1896, together with costs. There was a motion on the part of the plaintiff to confirm the referee's findings, and also a motion on the part of the defendant to

modify the findings and render judgment in favor of the defendant. The plaintiff's motion to confirm the findings was granted, and judgment rendered for the plaintiff in accordance with said findings, and the defendant appeals.

*E. E. Brossard,* for the appellant, cited as decisions in which parties have been held to come within the rule of gratuitous services although they lived in separate houses and were not members of one family: *James v. O'Driscoll,* 1 Am. Dec. 632; *Raynor v. Robinson,* 36 Barb. 131; *Robinson v. Raynor,* 28 N. Y. 505 (dissenting opinion); *Ross v. Ross,* 6 Hun, 182, 185; *Peak v. Grover's Ex'rs,* 14 Ky. Law Rep. 206. This rule has been applied to dealings between brothers and sisters. *Collyer v. Collyer,* 113 N. Y. 442; *Hall v. Finch,* 29 Wis. 278, 286; *Scully v. Scully's Ex'rs,* 28 Iowa, 548; *Keller v. Stuck,* 4 Redf. Sur. 294. The relationship, at the beginning, gave plaintiff's labor its character; and it is presumed to have retained that character until some word or act was said or done which changed it. *Harris v. Smith* (Mich.), 6 L. R. A. 702; *Hall v. Finch,* 29 Wis. 278.

For the respondent there was a brief by *Cate, Sanborn, Lamoreux & Park,* and oral argument by *B. B. Park.*

WINSLOW, J. The appellant makes two contentions upon the facts, and one upon the law, of the case. Her contentions of fact are (1) that the compensation allowed the plaintiff by the referee and the court for his services was excessive; and (2) that the evidence shows that such services were fully paid for by the deceased, and that a number of the defendant's counterclaims should have been allowed. Her contention upon the law is that upon the evidence the court should have found that the plaintiff's services constituted no legal claim, because no express contract to pay for them was proven.

We shall spend no time with the questions of fact. The trial was long, and the evidence quite complicated, covering many transactions between the parties; and after examination thereof, we are unable to say that it does not support the findings of fact made by the referee and confirmed by the court.

The question of law demands more serious consideration. The parties were brothers. No express contract between them was shown, and the appellant claims that, under the circumstances in evidence, an express contract on the part of the deceased to pay his brother for his services must be shown, by direct or circumstantial evidence, in order to entitle the plaintiff to recover, under the rule laid down by this court in *Hall v. Finch,* 29 Wis. 278, and numerous subsequent cases. *Pellage v. Pellage,* 32 Wis. 136; *Tyler v. Burrington,* 39 Wis. 376; *Wells v. Perkins,* 43 Wis. 160; *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252; *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129; *In re Schmidt's Estate,* 93 Wis. 120, 67 N. W. 37; *Pritchard v. Pritchard,* 69 Wis. 373, 34 N. W. 506; *Geary v. Geary,* 67 Wis. 249, 30 N. W. 601; *Martin v. Estate of Martin,* 108 Wis. 284, 84 N. W. 439. The rule laid down in these cases is well summarized in the case of *In re Schmidt's Estate, supra,* as follows:

"Where near relations by blood or marriage reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging, or other necessaries or comforts, the presumption arises that neither party intended to receive or pay compensation for the services, on the one hand, or the board and lodging or other necessaries or comforts, on the other, and that they were intended as mutual acts of kindness, done or furnished gratuitously."

The respondent recognizes this rule as correct, but claims that it does not apply to the present case, and with this contention we are inclined to agree. In the present case the parties were brothers, it is true; but they were grown men, be-

Williams v. Williams, 114 Wis. 79.

tween forty and fifty years of age. Each was married, and each had for years managed his own individual affairs; there being no facts showing dependence of the one upon the other. When the plaintiff came to Ashland, in April, 1892, he came without his family, and lodged with his brother (the deceased), evidently as a guest, and stayed there for a number of weeks; the exact length of his stay being uncertain, under the evidence, but it does not seem to have exceeded six weeks. During this time he commenced superintending the erection of some houses which his brother (the deceased) was building upon lots owned by him in Ashland. The testimony is quite convincing that he put much labor into this enterprise, not only superintending the work, but drawing rough plans himself, buying and paying for the material out of funds furnished by his brother, doing rough carpenter work, painting woodwork and building walks personally, and in fact spending all his available time in the work from the time of its commencement, in May, 1892, up to August 1, 1893, with the exception of the months of February, March, and April of 1893. The evidence tends to show that he ceased to live at his brother's home in June, 1892, and went to live in one of his brother's houses, though still taking his meals with his brother, until his family came, somewhere about July 1, 1892, after which he took his meals at home, with his own family, and defrayed his own living expenses by the aid of a son who was at work for others. It may be admitted that, while the plaintiff was stopping at his brother's house and taking his meals there, he must be regarded as a guest, and that any incidental services which he might then render to his brother would be regarded simply as offices of kindness, for which no pay was expected, any more than pay would be expected for lodging and meals furnished him. As said in the case of *In re Schmidt's Estate, supra,* "The law would not imply a promise on the part of a guest

to pay for board and lodging," nor, on the other hand, would it imply a promise to pay for services rendered by him while receiving the hospitality accorded to him as a guest. *Moulin v. Columbet,* 22 Cal. 508; *Scully v. Scully's Ex'rs,* 28 Iowa, 548. But when he set up in his own housekeeping establishment, and ate at his own table, he certainly ceased to be a guest; nor do we think the mere fact that the deceased was his brother would be sufficient to raise the presumption that his labor was simply an expression of brotherly kindness. It must be admitted that the line is not always an easy one to draw. Where there is close relationship between the parties, and they live under the same roof, the rule is almost universal that services rendered by one to the other are presumed to be simply natural acts of kindness, and intended as a gratuity. Such are most of the recorded cases. There doubtless are cases where, though the parties do not live in the same household, still, from the closeness of the relationship, and the fact of dependence of the one upon the other, as of an aged party upon a son, or a feeble sister upon a brother, the same presumption may arise. *Raynor v. Robinson,* 36 Barb. 128; *Ross v. Ross,* 6 Hun, 182. We do not think it arises, however, under the circumstances of the present case, after the plaintiff's family came to Ashland and he commenced housekeeping with them. Under the testimony this appears to have been about the 1st of July, 1892; and the referee seems to have allowed compensation only from this time, for he has allowed but ten months' services between May 1, 1892, and August 1, 1893,—a period of fifteen months in all. The referee, therefore, must have omitted the months of May and June, 1892, as well as the months of February, March, and April, 1893, for which the plaintiff claimed no compensation, in order to arrive at his result. The presumption that the services were gratuitous not arising, the ordinary rule that, from the mere fact of the rendition of valuable

services by one to another, with the knowledge of such other, a contract to pay their reasonable value will be implied, must apply.

*By the Court.*—Judgment affirmed.