GUGEL, Respondent, vs. OLIN and others, Appellants, and
another, Respondent.

*November 9, 1918—January 7, 1919.*

*Master and servant: Implied promise to pay for services: Attorneys at law: Liability to pay client's brother, a lawyer, for assisting in suit.*

1. A promise to pay for services rendered by request will usually
   be implied from the very fact of the request; but the relations
   or the circumstances of the parties may be such that no such
   implication will arise.
2. A finding by the jury in this case that the plaintiff, a lawyer,
   was employed by the defendants, a firm of lawyers, to assist
   them in a lawsuit in which they were attorneys for plaintiff's
   brother, with the understanding that defendants were to be
   personally liable for his services, is *held* not to be supported
   by the evidence. ESCHWEILER and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane
county: G. N. RISJORD, Judge. *Reversed.*

Action by the plaintiff, a Milwaukee lawyer, to recover
of the defendants *Olin et al.,* composing the law firm of Olin,
Butler, Stebbins & Stroud, practicing at Madison, $400 for
legal services rendered at their request and on their implied
promise to pay what such services were reasonably worth.

The plaintiff's work was performed in 1915 in the case of
Pfister v. Gugel, then pending in the circuit court for Dane
county, in which the defendant (the brother of the plaintiff
in the present action) had employed the *Olin* firm to represent him.

The defendants in the present action admit that the plaintiff rendered some legal services in the action referred to, but
deny that they employed the plaintiff or that they agreed or
expected to pay for such services, but that such services were
in fact rendered by the plaintiff to his brother because of the
relationship between them. On motion of the defendants
the respondent *E. G. Gugel* (who was the defendant in the
case of Pfister v. Gugel) was brought in as a party, and the

defendants by cross-complaint asked that in case it was determined that they were liable to the plaintiff that they have judgment against *E. G. Gugel* for the amount that they were compelled to pay to the plaintiff.

There is no dispute as to the fact that the plaintiff rendered services in the case and participated in the trial, assisting the defendants, but the circumstances leading up to that participation are in some dispute. It seems that the plaintiff and *Mr. Stebbins,* of the defendants' firm, were acquainted, having been in the same class in the Wisconsin University law school, and it is the claim of plaintiff that *Mr. Stebbins,* on learning of the relationship of the plaintiff to his client and also that the plaintiff was in Madison on other business, told his client, *E. G. Gugel,* to bring him to the office as he *(Stebbins)* wanted to see him; that the plaintiff at first objected, but finally went, and when he came to the office *Mr. Stebbins* at once said to him, *"Frank,* I want you to help me and sit in this case with me;" that he (plaintiff) at first objected, and on *Stebbins* repeating his statement said that he thought *Stebbins* was looking for a goat, some one to put the blame onto in case the suit was lost, but finally said, "All right, upon the distinct understanding that I don't come into the case on behalf of my brother," to which *Mr. Stebbins* assented.

*Mr. Stebbins's* version of this transaction was that his client informed him that his brother *Frank* was in Madison, and he then recognized him as a classmate in law school; that he *(Stebbins)* asked if he *(Gugel)* had talked with *Frank* about the case, and on his stating that he had done so said that if he cared to bring *Frank* to the office he *(Stebbins)* would be glad to talk with him about the case; that *Frank* afterward came to the office with his brother and he *(Stebbins)* said to *Frank* that he doubtless had a great interest in the case in which his brother was defendant, to which *Frank* agreed, and he *(Stebbins)* then said that if he *(Frank)* cared to participate in the case he would be glad to have his assistance. It is not claimed by either party that

Gugel v. Olin, 168 Wis. 321.

anything was said about compensation. The plaintiff returned to Milwaukee and considerable correspondence followed between the parties about the case. In a letter to *Mr. Stebbins* written October 28, 1915 (two days after the interview aforesaid), the plaintiff, after discussing the case somewhat, writes as follows:

"Now, *Mr. Stebbins*, I want it strictly understood that if I sit in the case with you, participate in its trial, that it is strictly at your request; not at the request of my brother or pursuant to my desire. I want you to feel that I feel and my brother also feels that you gentlemen are fully capable of handling this case, and my coming up there to see you in company with my brother the other day did not have for its purpose any interference in the case on my part. However, understand me rightly, that if you desire that I should participate in the disposition of this matter, under the circumstances, I will be pleased to afford you whatever assistance I am capable of; but always upon the understanding that you control the case and that I serve merely in an advisory capacity. I do not want to be the cause of any lack of interest in the matter."

To this *Mr. Stebbins* responded in a letter written on the following day as follows:

"I understand fully your attitude in this matter and appreciate your willingness to co-operate in the case and your desire not to have it appear that you are getting into the case at your request. On my part, I should like you to understand that I want your assistance and co-operation, both in the preparation of this case and on the trial thereof. It is a case where there are some of the facts that are quite strongly against us and we will have to do some good work if we get your brother out of it successfully. As soon as I knew of the relationship I felt sure that you would have a deep interest in the case, and it was for this reason that I asked your brother to bring you over to the office."

Other correspondence followed concerning the case but containing nothing bearing materially on the present question. The case came on for trial March 6, 1916, at Madison, and plaintiff was present assisting. It was an action arising

out of a contract for the sale of a farm by *E. G. Gugel* to one Pfister for an agreed price of about $30,000, on which $1,800 or $2,000 had been paid down. Pfister claimed fraud in the sale and sued to recover back the down payment and damages. After a half day in the trial court the case was settled by the parties and the litigation closed. On March 13th plaintiff wrote to his brother saying, "When you pay *Stebbins* have him give you a statement showing what he charges you for services and what the expenses are; then let me know." On March 14th the defendants' firm sent an itemized bill to *E. G. Gugel* for services and expenses in the case, amounting to $549.48, which contained no charges for the services or expenses of the plaintiff. This account was paid March 20th. On the same day the plaintiff wrote to his brother, *E. G. Gugel,* as follows:

"I have been thinking since you left last Saturday and I want to ask you once more whether you at any time suggested to *Mr. Stebbins* that you would like to have me help *Stebbins* in the case. You see this will become very material if I should have to proceed against *Stebbins* and the rest for my compensation for my services in the action. If you did, say so, and if you did not, say so also."

On the 25th of March plaintiff again wrote his brother as follows:

"Received your letter this morning and was pleased to hear from you. I sent in my statement yesterday and expect to hear from them by Monday. In the meantime do not say anything about it. Before you or any of you do any talking, let me get through with them first. You see, I may have to sue them and may need you as a witness, and in that case, consequently, the less said in the meantime the less they will be able to bring up at the time of the trial. They may and may not allow the thing to go in court. I shall, however, insist upon having every cent that is coming to me.

"I took off a few minutes yesterday and looked up the law relating to my claim against the *Olin* firm. I am absolutely within the law. That being so, there is no reason why I should not begin my legal rights to the last cent. I will let you know just as the negotiations proceed."

The plaintiff admits that *E. G. Gugel* sent him a copy of the *Stebbins* bill a short time after it was sent to him *(E. G.)* and before he sent his bill to *Mr. Stebbins*. March 22, 1916, the plaintiff mailed an itemized bill for services to *Mr. Stebbins's* firm amounting to $410. On the 25th of March *Mr. Stebbins* replied, acknowledging receipt of the statement and stating that they had forwarded the statement to his brother, *E. G. Gugel,* against whom the charges should have been made. *E. G. Gugel,* on April 4th, replied to *Mr. Stebbins,* returning *Frank's* bill and stating that he *(Stebbins)* hired *Frank* and must settle with him.

There was a jury trial and a special verdict rendered, by which it was found (1) that the plaintiff was employed by the firm of Olin, Butler, Stebbins & Stroud with the understanding that the firm was to be personally liable for the services, and (2) that the reasonable value of the services was $100. Judgment was rendered against the appellants on this verdict and dismissing their cross-complaint, and from that judgment this appeal is taken.

For the appellants there was a brief by *Jones & Schubring* of Madison, of counsel, and a reply brief by *H. L. Butler* of Madison, one of the defendants, and oral argument by *E. J. B. Schubring.*

For the respondents there was a brief signed by *F. H. Gugel, in pro. per.,* and *Gugel & Kline,* attorneys for *E. G. Gugel,* and oral argument by *F. H. Gugel.*

WINSLOW, C. J. The jury having found that the appellants' firm employed the plaintiff to assist them upon the understanding (mutual of course) that they were personally to pay him, the vital question in the case is simply whether there is any evidence upon which that finding can stand.

It is certainly a remarkable transaction which the plaintiff claims and which the jury have found. Lawyers are not wont to employ counsel and agree to pay them out of their own pockets, at least lawyers of long experience and exten-

sive practice, but that does not make the plaintiff's theory incredible.

Giving the most favorable construction to the evidence which it will reasonably bear, we find a request on the part of the appellants that the plaintiff assist them in the case, and a consent thereto by the plaintiff followed by the rendering of the assistance; but we find no express promise to pay for such assistance. Of course an express promise to pay for services rendered by request is not ordinarily necessary; a promise to pay will usually be implied from the very fact of the request; but the relations of the parties may be such or the circumstances surrounding them of such a character that no such implication will arise. Thus no contract to pay is implied when a parent or one standing in that relation requests services of a child living at home, though the child be an adult (*Taylor v. Thieman,* 132 Wis. 38, 111 N. W. 229), and the same rule applies where services are rendered between persons who are *de facto* members of the same family, though there be no blood relationship. The relationship of the parties is such that it is naturally presumed that the services are rendered gratuitously, without thought of compensation on either side, and hence there is no implication of a promise to compensate, but the party claiming compensation must show an express promise therefor. Many valuable services are simply the incidents of feelings of friendship or neighborly accommodation and are universally expected to be gratuitous. In this class fall board and lodging furnished to an invited guest (*Harrison v. McMillan,* 109 Tenn. 77, 69 S. W. 973), political services rendered to a friend in a campaign (*Levy v. Gillis,* 1 Penn. (Del.) 119, 39 Atl. 785), the indorsement of a friend's note (*Hagar v. Whitmore,* 82 Me. 248, 19 Atl. 444), mutual services between friends rendered without intent to charge (*Gross v. Cadwell,* 4 Wash. 670, 30 Pac. 1052), and many others that might be named. See, on this subject, 2 Page, Contracts, § 777.

We think the present case falls within this latter class. This was the situation: The plaintiff's brother, with whom he was on the best of terms, was engaged in serious litigation. Naturally the plaintiff must have felt a deep interest in the result; he would be less than human were it otherwise. His brother had employed an entirely competent firm to attend to his interests. This firm was not looking out for professional aid, but on learning that the client had a lawyer brother who was in the city and was also a classmate of *Mr. Stebbins,* that gentleman expressed a desire or a willingness to see and talk over the case with him. As a result of this the plaintiff came to *Mr. Stebbins's* office and it was then arranged that plaintiff was to participate in the case, but no word was said about compensation. It stretches credulity to the breaking point to suppose that *Mr. Stebbins* then had any idea of retaining the plaintiff at the expense of his firm. Young lawyers sometimes get help from older lawyers in their cases and pay for it themselves, if, as is rarely the case, the older lawyer makes any charge; but old established law firms handling large interests all the time do not do things that way. If, by reason of the magnitude or delicacy of the questions involved, they feel the advisability of counsel, they tell their clients so, and, with their clients' consent, employ the best of counsel, at the expense of the clients. The court is not only entitled to but must take notice of this fact in judging what the acts of the parties here meant: it is part of the atmosphere of the transaction. To our minds the inevitable and only reasonable conclusion from the circumstances here is that *Mr. Stebbins* supposed that the plaintiff was desirous of assisting his brother, and for that reason only, and with no thought of hiring him, suggested that he would be pleased to have the plaintiff participate in the case. The whole atmosphere and surroundings repelled the idea that employment was intended. The letters which immediately followed tend to confirm this conclusion. The

plaintiff says that he wrote the letter of October 28th because he "wanted to clear the matter up so there could be no misunderstanding between myself and *Mr. Stebbins* about my coming into the case and my position in the case." Strange indeed, if this was the purpose of the letter, that no word was said in it concerning the only thing about which there well could be any misunderstanding, namely, the question as to the plaintiff's compensation, if he expected any. But, granting that the plaintiff honestly supposed that the appellants' firm had consciously hired him at their own expense because they felt that they needed his help, the reply of *Mr. Stebbins* to this letter was certainly enough to put him upon inquiry on this point, if not to convince him that *Mr. Stebbins* did not so understand the situation. In this letter *Mr. Stebbins* says that "as soon as I knew of the relationship I felt sure you would have a deep interest in the case, and *it was for this reason* that I asked your brother to bring you over to the office."

The meaning of this is unmistakable; it was the deep interest which *Mr. Stebbins* supposed plaintiff would have in his brother's troubles which led him to suggest to plaintiff that he participate in the case. It seems that any person who was really trying to clear up misunderstandings and leave no doubt as to his position in the case would infallibly have discovered from this letter that there was a vital misunderstanding on the question of compensation, and would have at once brought the question up definitely and pointedly, either by personal interview or by letter, and had it settled before proceeding further. Not so, however, with the plaintiff; he closed the correspondence on the subject right there, knowing that *Mr. Stebbins's* thought in the matter was that the plaintiff's interest in his brother's welfare would be a sufficient inducement for him to assist in the lawsuit, and proceeded to pile up a bill of $400 for legal services against brother lawyers.

That the plaintiff at some time during the progress of

events learned that *Mr. Stebbins* did not consider that he had personally employed him is made quite clear by the letters to his brother in March.	He then begins to prepare for the present lawsuit.	March 13th he writes his brother asking him to send a statement of *Stebbins's* bill when he pays it; March 20th he writes asking his brother what he said to *Stebbins,* as it "will become very material if I should have to proceed against *Stebbins* and the rest for my compensation;" and five days later he writes that he has sent his bill to the *Stebbins* firm and cautioning his brother not to say anything, as he may have to bring a suit for his pay.	All this preparation for a lawsuit took place before the plaintiff had even presented his bill, and before a word had been said between plaintiff and the appellants about compensation.

It is not a pleasant picture thus drawn.	We of the bench and bar talk much of the nobility of the profession.	We say, and we say truly, that the practice of law should be a ministry at the altar of justice rather than a money-making business, but such transactions as these make this thought unintelligible to the layman, and tend to justify the too frequent jeers at the law and its administration.

Mr. Tulliver regarded all lawyers as "raskills" and thought that the only sure way to win a lawsuit was to hire the biggest "raskill" as his own lawyer.	This was on the theory that the practice of the law is simply a battle of shrewd wits, which is to be won by the sharpest trickster. There should be nothing in the conduct of any lawyer to lend color to that belief.	His standard of conduct can hardly be too high.	Chief Justice RYAN well said *(Wight v. Rindskopf,* 43 Wis. 344, 356), "The profession of the law is not one of indirection, circumvention, or intrigue."	The lawyer who really believed his profession to be service at the shrine of justice would have gone to his brother lawyer at the very first moment when he learned that they did not understand things alike and talked the matter over, and if he found that his brother was honest in his thought that no contract in-

volving personal liability had been made (as is evident in the present case) would have at once abandoned any such claim as is here made.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint on the merits.

EschWEILER, J. *(dissenting)*. The general rule is firmly established that where services of a kind for which compensation is usually paid are rendered by one to another upon request, and the results thereof accepted by the latter, nothing being said as to compensation, the law steps in and creates an obligation to pay for the reasonable value thereof. *Miller v. Tracy,* 86 Wis. 330, 56 N. W. 866; *Williams v. Williams,* 114 Wis. 79, 84, 89 N. W. 835; *Felker v. Haight,* 33 Wis. 259; *Kelly v. Houghton,* 59 Wis. 400, 18 N. W. 326; *Link v. C. & N. W. R. Co.* 80 Wis. 304, 50 N. W. 335; *Wheeler v. Hall,* 41 Wis. 447; *Pangborn v. Phelps,* 63 N. J. Law, 346, 43 Atl. 977; 2 Page, Contracts, p. 1169, § 772.

I cannot acquiesce in the doctrine which is in effect announced by the majority opinion that this general rule is to be qualified so that a different presumption arises and a different rule applies when the dispute is between attorneys than when between other individuals of the great mass of mankind.

That no such distinction has heretofore been recognized seems well established. Weeks, Attorneys (2d ed.) p. 673, § 335, says:

"So where one attorney does business for another, the attorney employed generally looks to the attorney who employs him and not to the client. If the attorney employing another wishes to escape personal responsibility he must give express notice that the business is to be done on the credit of the client; and it is no defense that the business was known by the plaintiff to be done for the benefit of the client."

See, also, 2 Thornton, Attorneys, p. 952, § 559; *Scott v. Hoxsie,* 13 Vt. 50; *Graydon v. Stokes,* 24 S. C. 483; *Serace v. Whittington,* 2 Barn. & C. 11; 6 Corp. Jur. 734.

Defendants relied by pleadings and argument here by way of defense as follows: (1) That if any contract was made it was by the two letters of October 28th and October 29th, and that these two letters, in connection with the testimony as to the surrounding circumstances, require the conclusion as a matter of law that there was no contractual relationship between the parties; (2) that the minds of the parties never met; and (3) that if there was a liability on their part it should be shoved over to the brother, *Ernest G. Gugel.*

As to the first and third grounds, if the test of the general rule above stated is applied it appears as though both the questions so raised were within the wide province of the jury's determination. On the first point, we have the expression in *Mr. Stebbins's* letter to the plaintiff, "On my part I should like you to understand that I want your assistance and co-operation, both in the preparation of this case and on the trial thereof," which, if standing alone, would have been sufficient to create beyond question a basis for liability. That it was modified by other expressions in the same letter and by surrounding circumstances could not properly take it from the jury. On the second point, in view of plaintiff's letter to *Mr. Stebbins* saying, "Now, *Mr. Stebbins,* I want it strictly understood that if I sit in the case with you, participate in its trial, that it is strictly at your request; not at the request of my brother or pursuant to my desire," it became also a question for the jury to solve.

The drawing of reasonable inferences from the facts in evidence is jury duty. *Gessner v. Roeming,* 135 Wis. 535, 536, 116 N. W. 171; *Vilas v. Bundy,* 106 Wis. 168, 176, 81 N. W. 812.

The undisputed and indisputable facts that the defendants were of the highest standing, competent and able to carry on

the lawsuit then pending without outside assistance, though persuasive as an argument against plaintiff's case, do not necessarily determine it.    The jury might well have considered, what is matter of general knowledge, namely, that the able and competent professional gentlemen are invariably the busy ones and might require assistance in some particular case, from lack only of time in which to look after all of its details.    This consideration might. have had weight with the jury in view of what was said by *Mr. Stebbins* in his letter to plaintiff of November 11th, "I have had, as yet, little opportunity to do much work on the law of this case and am therefore particularly glad that you are going into it so thoroughly.    I suggest, in order to save duplication, that you send me such brief or notes as you may prepare as soon as possible."

In cases for recovery for the reasonable value of requested, accepted services, that the recipient did not expect to pay for them is immaterial.    2 Thornton, Attorneys, pp. 952–954, § 559.    This question was squarely raised and settled in the case of *Miller v. Tracy,* 86 Wis. 330, 56 N. W. 866, where the plaintiffs' firm of attorneys rendered services for the defendant, who was administrator of an estate and whose own counsel could not act with reference to the particular claim then in litigation.    The defendant objected to paying on the ground that there was no express contract for services and no meeting of the minds of the parties in respect to their employment.    This court there said (p. 336) :

"But we think that the liability of the defendant in this case may be safely rested upon the ground that if services are rendered, as in this case, in the mistaken belief that there is a contract therefor, when the minds of the parties have never met, a recovery may be had *quantum meruit* for the benefit conferred by them, and upon the ground 'that he who gains the labor and acquires the property of another must make reasonable compensation for the same' (citing *Van Deusen v. Blum,* 18 Pick. (35 Mass.) 229) ; and that this rule is particularly applicable to the case of an administra-

tor who has assets out of which to indemnify himself. . . . The fact that he [defendant] has deliberately taken the benefit of the services and disbursements in question which enabled him to perform his duty as administrator, dispenses with any necessity of proving a previous request, and we are of the opinion that the defendant may be properly held liable for these services and disbursements, as well upon an implied assumpsit as if there had been an express contract, and we have not been referred to any authority to the contrary. The recovery in this case is, we think, correct."

That there is a custom between brother attorneys that services by one attorney, such as assisting in the preparation for and participating in the trial of another's case, shall be without compensation therefor in the absence of express agreement, was not pleaded nor proof thereof offered in this case. There is a substantial difference between the common practice of discussing the knotty questions in one's case with a brother attorney or the appearing for or assisting in the trial of a case where brother attorneys are plaintiffs or defendants and such a situation as here. And the shadowy nature of any custom or courtesy of not charging brother attorneys is indicated by what is said in such cases as *Thigpen v. Slattery,* 140 La. 707, 73 South. 780; and in the case cited in 2 Thornton, Attorneys, § 559 *(Graydon v. Stokes,* 24 S. C. 483, *supra)*, where it is said: "The very fact that it is called *a courtesy* indicates that making no charge is exceptional, and that the general rule is to charge . . . and certainly the moment the parties, from any cause whatever, stand upon their rights, there can be no such thing as *courtesy* in the case."

If it be unethical and therefore, as here decided, illegal for one attorney to claim compensation for requested and rendered legal services from a brother attorney in the absence of express agreement, it appears to me to be just as unethical for an attorney to claim and recover compensation from an officer of the court, who had no expectation that he was to pay therefor, as he was allowed to do by this

court in the case of the administrator defendant in *Miller v. Tracy,* 86 Wis. 330, 56 N. W. 866.

If the failure to speak of compensation for requested and rendered services by the brother at the bar to the brother at the bar works a forfeiture of any right to recover, the same ethical rule should govern the attorney in his relationship with others than attorneys. His standard should certainly be no lower for his actions with clients than with brother attorneys. Although entertaining, I hope, as high an opinion of the exalted nature of the duties and obligations of counselors at law as that expressed in the majority opinion, I cannot feel that they should be so set apart from the rest of mankind or that a rule which permits a brother of the blood to recover for requested services rendered to a brother of the blood who had no expectation of paying therefor, as was done in *Williams v. Williams,* 114 Wis. 79, 89 N. W. 835, *supra,* should not be as applicable to the relationship of brethren at the bar; the latter relationship surely calling for no more application of the golden rule than the former.

I am in accord with what is said by the majority as to the unpleasant disclosures of plaintiff's secret maneuvers with his brother in the matter of defendants' bill. It shows a want of the good faith required of him who is employed towards those who employ, and that is the alleged relationship upon which plaintiff predicates his right to recover. Whether his given reasons for so doing were valid and sufficient was a question for the jury. It would have been ample justification for the jury to have discredited his theory of employment or expectation of compensation on his part, but further than saying this an appellate court cannot well go.

I think, therefore, the court below was justified, both in law and in fact, when, in upholding the verdict, he said:

"I should have some difficulty in agreeing with the jury that there was an agreement between the parties that the defendants should become personally liable for plaintiff's services, but I cannot agree with defendants' counsel that there

is no evidence from which the jury could find as they did upon that question."

I think, therefore, the judgment should be affirmed.

I am authorized to state that Mr. Justice KERWIN concurs in this dissent.